**Opinion filed June 10, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00222-CR

_____

## JACOB ADAM JOSEPH SMITH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR50490**

## O P I N I O N

The grand jury indicted Appellant, Jacob Adam Joseph Smith, for the second-degree felony offense of online solicitation of a minor whom he believed to be younger than fourteen years of age at the time of the commission of the offense. *See* TEX. PENAL CODE § 33.021(c), (f) (West 2016). The jury convicted Appellant of the charged offense and assessed his punishment at ten years' imprisonment in the

Institutional Division of the Texas Department of Criminal Justice and a $5,000 fine. Pursuant to the jury's recommendation, Appellant's sentence and fine were suspended. The trial court sentenced Appellant accordingly and placed Appellant on community supervision for a period of ten years.

In four issues on appeal, Appellant asserts that (1) the evidence is insufficient to support his conviction, (2) the trial court erred when it overruled Appellant's Confrontation Clause objection regarding Appellant's videotaped interview, (3) the trial court erred when it refused to submit Appellant's proposed jury instruction, and (4) it was error for the district clerk to assess court-appointed attorney's fees and court reporter's fees against Appellant, who had been adjudged indigent by the trial court. We modify and affirm.

## I. *Factual Background*

During the summer of 2017, as part of a larger operation to combat crimes against children and human trafficking, state and federal law enforcement agents created an online post on Craigslist in which law enforcement officers posed as minors. The advertisement was posted in the "casual encounters" section in the "women for men" category.

Law enforcement conducted the operation from an apartment in Midland; there, officers would chat online with people who responded to the post and who indicated that they were willing to have sexual contact with a minor. Appellant responded to the post on a Friday night around 10:00 p.m. and exchanged several text messages with Homeland Security Investigations Agent Daniel Yon, who was posing as a thirteen-year-old girl.

During their text message conversation, Appellant asked, "How old are you?" Agent Yon responded, "[I'm] almost 14 but ppl say [I] look older." A few messages

later, Appellant asked, "Do you wanna come over and ta'll [sic] and drink maybe have sex? Just see where it goes." Agent Yon responded, "I wanna get to meet u first.. lol" and subsequently asked, "ur ok with me being younger?" Appellant replied, "Yes I'm okay with it. But how old are you?" Agent Yon then texted, "[I] told u [I'm] almost 14 but ppl say I look older." Finally, Appellant messaged, "Okay send me an address and I will swing by and pick you up."

Appellant and Agent Yon continued to exchange text messages and coordinated Appellant's arrival at the apartment where law enforcement officers were waiting. Appellant arrived at around 11:00 p.m. Before entering the apartment, he texted once more, asking, "I'm at the door how do I know this isn't a trap though?" He then entered the apartment and was immediately arrested. After Appellant was arrested, law enforcement officers sent another text message to the phone number that Agent Yon had been exchanging messages with. The text message confirmed that the phone number was associated with the phone in Appellant's possession when he was arrested.

Appellant was Mirandized[1] and willingly and voluntarily spoke with two officers at the apartment—Agent Yon and Texas Ranger Cody Allen. Appellant denied receiving the first text message regarding the age of the minor that he intended to meet. Appellant stated that, after he received the second age-related text message, he was no longer interested in sexual contact and that he went to the apartment simply for some company. During the interview, Appellant gave Ranger Allen the passcode to unlock his phone and consented to Ranger Allen reading the saved text messages on the phone. Ranger Allen testified that, although he reviewed the text message string conversation on Appellant's phone between Appellant and

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Agent Yon, he did not see the first message that mentioned the age of the minor that Appellant had arranged to meet.

At trial, the State offered the recording of the videotaped interview between Appellant, Agent Yon, and Ranger Allen into evidence. Appellant's trial counsel raised a Confrontation Clause objection to the recording on the basis that the recording contained statements made by Agent Yon, who, prior to trial, had been transferred to another state and was unavailable to testify. After a bench conference outside the presence of the jury, the trial court admitted the recording on the basis that Agent Yon's statements provided "context" to the statements Appellant had made during the interview. The State also redacted the audio of any portion of the videotaped interview in which Ranger Allen was not present. Prior to the recording's publication to the jury, the trial court instructed the jury that any statements made by Agent Yon were not to be considered for the truth of the matter asserted but could only be considered to show context or background information for the statements Appellant made during the recording. Appellant's trial counsel requested that the trial court include a similar instruction in its charge, but the trial court refused. The jury convicted Appellant of the charged offense, and this appeal followed.

## II. *Analysis*

### A. *Sufficiency of the Evidence*

In his first issue, Appellant contends that the evidence is insufficient to support his conviction for the charged offense. Specifically, Appellant asserts that the State was unable to prove that he received the first text message from Agent Yon stating that his potential victim was thirteen years old. According to Appellant, this lack of receipt shows that, at the time he sent the text message whereby he offered

4

to have sexual contact with the minor, he did not know that he had communicated with a minor. Appellant also contends that the evidence is insufficient to show that he had the specific intent to engage in sexual contact with a minor younger than fourteen because, in addition to not knowing that the recipient of his text messages was only thirteen, his text message stated, "maybe have sex." Appellant contends that this qualification of "maybe" rendered the message insufficient, standing alone, to prove the required specific intent.

The State concedes that it could neither prove nor disprove that Appellant received the first age-related text message; however, the State asserts that, even if Appellant had not received the first age-related text message, it is undisputed that he received the second age-related text message. Further, the State argues that the circumstantial evidence surrounding Appellant's online interactions with Agent Yon are sufficient to support his conviction for the charged offense of online solicitation of a minor child under the age of fourteen. We agree with the State.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including improperly admitted evidence, and defer to the

factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey v. State*, 393 S.W.3d 763, 767–68 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 722, 778 (Tex. Crim. App. 2007). This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

A person commits the offense of online solicitation of a minor:

> [I]f the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

PENAL § 33.021(c). The term "minor" includes "an individual whom the actor believes to be younger than 17 years of age." *Id.* § 33.021(a)(1)(B).

The gravamen of the offense of online solicitation of a minor under subsection (c) is the knowing solicitation of a minor to meet a person, with the intent that the minor will engage in some form of sexual contact with that person or another. *Ganung v. State*, 502 S.W.3d 825, 828–29 (Tex. App.—Beaumont 2016, no pet.). The act of "soliciting" is the prohibited conduct. *Ex parte Zavala*, 421 S.W.3d 227, 232 (Tex. App.— San Antonio 2013, pet. ref'd). The offense is completed at the time of the solicitation, and the requisite intent arises within the conduct of soliciting. *Ganung*, 502 S.W.3d at 828 (citing *Ex parte Lo*, 424 S.W.3d 10, 22–23 (Tex. Crim. App. 2013)); *see* PENAL § 33.021(c). In this case, the indictment alleged that Appellant knowingly solicited Agent Yon online with the intent that Agent Yon would meet with and would engage in sexual contact with Appellant and that Appellant believed that Agent Yon was a person younger than fourteen years of age at the time. With respect to the applicable mental state for this offense, a person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. PENAL § 6.03(b) (West 2021).

Even assuming that Appellant did not receive the first age-related text message, his assertion that the jury could not infer his specific intent to have sexual

7

contact with a minor simply because he sent the sex-related text message before he became aware of the recipient's age is flawed and misses the mark. Similarly, Appellant's bare qualification in his text message of "maybe" having sexual contact does not negate the other circumstantial evidence that supports the jury's inferences, as reflected in the verdict, that he had the requisite intent to commit the offense.

Appellant initiated the online contact between himself and Agent Yon by responding to the Craigslist advertisement, which was posted in the "casual encounters" section in the "women for men" category. It is undisputed that Appellant received at least one text message in which he was informed (and which he immediately acknowledged) that he was chatting with a thirteen-year-old girl. Appellant explicitly indicated his interest to engage in sexual contact with the minor: "Do you wanna come over and ta'll [sic] and drink maybe have sex? Just see where it goes." Although Appellant contends that he sent this text message before knowing the age of the person with whom he was chatting and that, after he became aware of her age, he no longer considered having sexual contact with her, he never disclaimed sending his initial message that indicated his interest in sexual contact, nor did he express any other hesitation or concern after he learned the age of the person with whom he was chatting.

The circumstances of this interaction support the jury's inference that Appellant had the specific intent to have sexual contact with a minor under the age of fourteen. *See Carrizales*, 414 S.W.3d at 742 (citing *Hooper*, 214 S.W.3d at 13). The evidence showed that Appellant responded to a post in the casual encounters section of Craigslist late on a Friday night, suggested an interest in sexual contact during his text message string conversation with Agent Yon, and indicated no concern or protest after he became aware that the other participant who was involved

in the text conversation was only thirteen years old. Finally, Appellant later arrived at the location where he believed the minor would be and texted, "[H]ow do I know this isn't a trap?" Here, the jury was permitted to use its common sense in evaluating these circumstances and inferring their significance. *See Maloney v. State*, 294 S.W.3d 613, 621 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (A jury may use its common sense and apply its common knowledge, observations, and ordinary life experience when giving effect to the inferences that may reasonably be drawn from the evidence.); *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *Taylor v. State*, 71 S.W.3d 792, 795 (Tex. App.—Texarkana 2002, pet. ref'd)).

Appellant further asserts that knowing solicitation did not occur because, according to him, he never received the first age-related text message. However, this contention, even if true, does not excuse the fact that, after he became aware of "her" age, Appellant never retracted his solicitation for sexual contact with "her." In fact, Appellant continued to interact with Agent Yon and showed no indication that his knowledge of the other person's age had changed either his interest to engage in sexual contact with "her" or the sexual nature of their exchange in any manner whatsoever. *See Maloney*, 294 S.W.3d at 621; *Aguilar*, 263 S.W.3d at 434.

In this case, Appellant's contentions do not fatally undermine the verdict but, rather, offer only a competing interpretation of the evidence. It is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. We presume that the jury resolved any conflicting inferences in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt*, 368 S.W.3d at 525–26; *Clayton*, 235 S.W.3d at 778. Moreover, it is not our role or function to engage in or make credibility

determinations. *Jackson*, 443 U.S. at 326; *Merritt*, 368 S.W.3d at 525–26; *Clayton*, 235 S.W.3d at 778.

Consistent with the applicable standard of review, we have reviewed the evidence in the light most favorable to the jury's verdict. Irrespective of Appellant's claim (with which we disagree) that there is no evidence that he had the specific intent to commit the charged offense, we agree with the State and hold that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was guilty of the offense of online solicitation of a minor as charged in the indictment. Accordingly, because sufficient evidence supports the jury's verdict, we overrule Appellant's first issue.

B. *Confrontation Clause Challenge*

In his second issue, Appellant contends that the trial court erred when it admitted, over Appellant's objection, certain statements made by Agent Yon during Appellant's videotaped interview, specifically: "That's not what the text said, you knew she was thirteen, I have that text"; "You came back and asked for sex"; and "the opportunity presented itself and maybe you took advantage of it." Appellant's trial counsel objected and argued that the admission of Agent Yon's statements violated Appellant's rights under the Confrontation Clause and that, therefore, the videotaped interview should not have been admitted. The State asserts that the statements were offered solely to provide the "context"[2] of

---

[2]There are generally two categories of "contextual" evidence: (1) same transaction contextual evidence, which refers to other offenses connected with the primary offense, and (2) background contextual evidence, which includes all general background evidence and may be admissible to assist the jury in understanding certain disputed issues. *See Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991). Background contextual evidence "fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness." *Id.* at 87.

Appellant's interview responses, not for the truth of the matter asserted, and were therefore not hearsay and did not implicate the Confrontation Clause.

Generally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006); *Render v. State*, 347 S.W.3d 905, 917 (Tex. App.— Eastland 2011, pet. ref'd). However, when we review a Confrontation Clause objection, we review the trial court's constitutional legal ruling de novo. *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011); *Wall*, 184 S.W.3d at 742–43; *Render*, 347 S.W.3d at 917.

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause bars the admission of out-of-court testimonial statements of a witness unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness. *See Nicholls v. State*, No. 11-19-00120-CR, 2021 WL 1034047, at *3 (Tex. App.—Eastland Mar. 18, 2021, no pet. h.); *see also Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Render*, 347 S.W.3d at 917.

The principal concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *Nicholls*, 2021 WL 1034047, at *3 (citing *Maryland v. Craig*, 497 U.S. 836, 845 (1990)). Whether a statement is admissible under the Rules of Evidence and whether that same statement is admissible under the Confrontation Clause are separate questions. *Id.* (citing *Wall*, 184 S.W.3d at 734–35). Thus, even when a statement offered against a defendant is

11

admissible under the Rules of Evidence, the statement may nonetheless implicate the protections of the Confrontation Clause. *See id.* (citing *Crawford*, 541 U.S. at 50–51); *see also Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006); *Walker v. State*, 406 S.W.3d 590, 596 (Tex. App.—Eastland 2013, pet. ref'd). To implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature. *See Nicholls*, 2021 WL 1034047, at *3 (citing *Woodall*, 336 S.W.3d at 642).

"Post-*Crawford*, the threshold question in any Confrontation Clause analysis is whether the statements at issue are testimonial or nontestimonial in nature." *Render*, 347 S.W.3d at 917; *Wells v. State*, 241 S.W.3d 172, 175 (Tex. App.—Eastland 2007, pet. ref'd). An out-of-court statement may be testimonial when the surrounding circumstances objectively indicate that the primary reason the statement was made was to establish or prove past events that would be potentially relevant to a later criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822–23 (2006). Consequently, statements are testimonial if the statements are made under circumstances that would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (citing *Wall*, 184 S.W.3d at 735–36); *Walter v. State*, 581 S.W.3d 957, 981 (Tex. App.—Eastland 2019, pet. ref'd).

It is undisputed that Agent Yon was absent from trial and that the challenged statements made by him are testimonial. However, it is well established that testimonial statements that are offered for purposes other than to establish the truth of the matter asserted do not implicate the Confrontation Clause. *Tennessee v. Street*, 471 U.S. 409, 414 (1985); *see also Langham*, 305 S.W.3d at 576 (citing *Crawford*, 541 U.S. at 59 n.9); *Del Carmen Hernandez v. State*, 273 S.W.3d 685,

687–88 (Tex. Crim. App. 2008). Nevertheless, courts that have addressed this confrontation exception have cautioned prosecutors not to invoke it too broadly, due to the inherent danger of such a practice becoming merely a "pretense for insulating out-of-court assertions from the crucible of confrontation and cross-examination." *Langham*, 305 S.W.3d at 577–78 & n.30. Even when a background out-of-court statement "is not *offered* for the truth of the matter asserted, its probative value to place other, more direct evidence in an understandable context will usually be slight compared to its tendency to cause the jury to consider it for that improper, truth-of-the-matter-asserted purpose." *Id.* at 580. Consequently, the more substantive and detailed the "background" out-of-court statement may be, the greater the likelihood that the jury will "gravitate toward the [statement's] improper use." *Id.*

The State cites to and relies on *Kirk v. State* for the proposition that statements made by police officers during an interview are not hearsay if they are offered only to provide context to the interviewee's replies. *See Kirk v. State*, 199 S.W.3d 467, 478–79 (Tex. App.—Fort Worth 2006, pet. ref'd); *see also In re Bexar Cty. Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 188–89 (Tex. 2007) (statements offered only to show their effect on the listener are not hearsay); *Young v. State*, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref'd). However, the State's emphasis on and characterization of Agent Yon's statements as being merely hearsay ignores the focus of Appellant's second issue on appeal. As we have said, the admissibility of testimony under the Rules of Evidence is a separate inquiry from that of the admissibility of the same testimony under the Confrontation Clause. *See Nicholls*, 2021 WL 1034047, at *3 (citing *Crawford*, 541 U.S. at 50–51); *see also Gonzalez*, 195 S.W.3d at 116; *Walker*, 406 S.W.3d at 596.

Because Agent Yon's challenged statements are testimonial, and because he was absent from trial, his statements would generally implicate the protections of the Confrontation Clause. *See Nicholls*, 2021 WL 1034047, at *3 (citing *Woodall*, 336 S.W.3d at 642). Having considered the substance of Agent Yon's challenged testimonial statements and the specific purpose in which these statements were offered by the State and admitted by the trial court, that is to show *context*, we conclude that Agent Yon's statements do not provide the necessary background context and cannot be construed as such.[3] Therefore, given that Appellant's confrontation rights were implicated, the trial court should not have admitted these statements on that basis. In light of our determination of this issue, we are mindful of the *Langham* court's warning that the background context exception should not be applied broadly in these circumstances. *See Langham*, 305 S.W.3d at 577–78 & n.30. Consequently, for the reasons discussed below, and based on the circumstances presented in this case, we hold that the probative value, if any, of Agent Yon's testimonial statements that purportedly placed Appellant's interview responses into "context" was too slight in comparison to the likelihood that the jury would have "gravitate[d] toward the [statements'] improper use." *Id.* at 577 n.30, 580; *see Hereford v. State*, 444 S.W.3d 346, 352–53 (Tex. App.—Amarillo 2014, no pet.) (out-of-court statements made by police in interview of defendant did not

---

[3]Generally, it is permissible for a law enforcement officer to express hearsay statements for the limited purpose of explaining to the jury the reasons why the officer took specific actions and proceeded to investigate a matter in a certain manner. *See Langham*, 305 S.W.3d at 577, 580; *Tienda v. State*, 479 S.W.3d 863, 879–80 (Tex. App.—Eastland 2015, no pet.). In such circumstances, the trial court would not err if it allowed the officer to testify that the officer acted accordingly based on the officer's reliance on certain generalized statements that were communicated to the officer by others. *See Langham*, 305 S.W.3d at 580; *Tienda*, 479 S.W.3d at 879–80. However, such a proffer was not made by the State in this case. Rather, the State strategically offered Agent Yon's testimonial statements solely to show background "context," and the trial court admitted these statements on that basis.

qualify as mere background information given their detailed and "damning" nature) (quoting *Langham*, 305 S.W.3d at 580).

Faced with similar situations, some of our sister courts have upheld the admission of out-of-court statements that otherwise would have implicated the Confrontation Clause because the statements were not offered for the truth of the matter asserted and provided the necessary context to the defendant's interview responses. However, in these cases, the courts typically admitted the complained-of statements because they were necessary to explain the effect of the defendant's responses in a coherent manner. *See Mendez v. State*, No. 08-17-00076-CR, 2019 WL 1649379, at *18 (Tex. App.—El Paso Apr. 17, 2019, pet. ref'd) (mem. op., not designated for publication) (out-of-court statement referenced by police in the defendant's interview was not offered to prove the truth of the matter asserted but to provide context to defendant's responses, and redaction of the references would have rendered defendant's responses nonsensical and incoherent); *McNeil v. State*, 452 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (statements by police interviewers were not offered for the truth of the matter asserted but were designed to prod defendant into providing more accurate information to explain inconsistencies between his version of events and the victim's injuries); *Hernandez v. State*, No. 01-08-00306-CR, 2009 WL 1331649, at *6 (Tex. App.—Houston [1st Dist.] May 14, 2009, pet. ref'd) (mem. op., not designated for publication) (redaction of references to out-of-court statement would have rendered defendant's interview responses incoherent, and were properly offered to provide context to the interview and to show the effect of out-of-court statement on the defendant); *see also Kirk*, 199 S.W.3d at 478–79 (out-of-court statement offered to give context to defendant's replies during police interview was not hearsay, and

redaction of statements would have rendered interview incoherent). Such circumstances do not exist here.

For example, in *Hernandez*, the defendant's trial counsel objected on hearsay and confrontation grounds to the admission of a videotaped interview of the defendant in which law enforcement officers referenced statements that were made to them by an unnamed witness. *Hernandez*, 2009 WL 1331649, at *6. The unnamed witness was not available to testify at trial. *Id.* In that case, the background context that the out-of-court statements provided to the jury was necessary to render the defendant's responses coherent because several of the defendant's responses were either nonverbal or simple expressions of assent or denial. *Id.* at *7.

We have carefully reviewed the videotaped interview between Appellant, Agent Yon, and Ranger Allen. Agent Yon's challenged testimonial statements did little, if anything, to provide either any background context to or improve the coherency of Appellant's responses. Unlike *Hernandez* and the other cases cited above, Appellant's responses in the interview were detailed and self-explanatory. Appellant calmly stated he did not have any knowledge of the first age-related text message, and he explained his version of events—that he did not know the age of the person that he had texted until after he had suggested having sexual contact with her and that, after he became aware of her age in the second age-related text message, sexual contact was no longer a consideration. Because Appellant's explanation was coherent and unambiguous, the need for additional background context information did not exist.

Although the State attempts to save the admission of Agent Yon's challenged statements through its reliance on the background-context exception, these statements do not provide any necessary *background context* that could have assisted

the jury in understanding the crux of Appellant's interview responses. Rather, the statements merely advanced the State's theory of the case: that Appellant knowingly solicited a minor for sexual contact online. Under these circumstances, where Appellant provided his own detailed version of events, Agent Yon's statements, such as "you knew she was thirteen" and "the opportunity presented itself and maybe you took advantage of it," can hardly be characterized as merely background contextual evidence. Further, the State cannot disguise hearsay or testimonial statements as background "context" and then later offer the same statements for an improper purpose. *See Langham*, 305 S.W.3d at 577–78. Because Agent Yon's challenged statements were testimonial and exceeded the permissible scope and purpose of presenting legitimate background context, the admission of these statements violated Appellant's confrontation rights. Thus, the trial court erred when it admitted these statements on the stated basis of background context.

Appellant next contends that the erroneous admission of Agent Yon's challenged statements justifies a reversal of his conviction. Constitutional error will result in a reversal of a conviction unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. *See Langham*, 305 S.W.3d at 582; *see also* TEX. R. APP. P. 44.2(a). Our analysis does not turn on whether the jury's verdict is supported by the evidence; rather, we must determine whether the error adversely affected the integrity of the process that led to Appellant's conviction. *Langham*, 305 S.W.3d at 582. As such, the admission of evidence in violation of the Confrontation Clause will result in a reversal if there is a reasonable possibility that, in the context of the entire trial, the error "moved the jury from a state of non-persuasion to one of persuasion on a particular issue."

*Id.*; *see Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007); *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).

We consider several nonexclusive factors when we determine whether the error contributed to the jury's deliberations and verdict. Those factors include: (1) the importance of the statements to the State's case; (2) whether the statements are cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; (4) the overall strength of the prosecution's case; (5) the source and nature of the error; (6) the extent to which the error was emphasized by the State; and (7) the weight the jury may have assigned the inadmissible statement. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011); *Langham*, 305 S.W.3d at 582 (citing *Scott*, 227 S.W.3d at 690–91); *Hereford*, 444 S.W.3d at 353. An analysis of whether a particular constitutional error is harmless "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden*, 353 S.W.3d at 822 (alteration in original) (quoting TEX. R. APP. P. 44.2(a)). Although we do not focus on whether the jury verdict was supported by the evidence, the presence of "overwhelming evidence of guilt is a factor to be considered." *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002); *see Langham*, 305 S.W.3d at 582.

Agent Yon's statements were of minimal importance to the State's case. In fact, the State adduced an abundance of direct evidence that linked Appellant to the charged offense, including the chat log, which showed the entirety of Appellant's text string conversation with Agent Yon. The chat log further showed that Appellant was interested in sexual contact, that he was aware that the recipient of his text

18

messages was thirteen years old, and that he made no attempt to disclaim his sexual proposition after he learned of "her" age. The State also adduced evidence that Appellant initiated the online contact between himself and Agent Yon when he responded to the Craigslist advertisement, which was posted in the "casual encounters" section in the "women for men" category.

Agent Yon's statements were also cumulative of other admitted evidence, such as the chat log and the Craigslist advertisement. Moreover, Agent Yon's statements are corroborated by certain statements that Appellant made during the videotaped interview. In fact, during the interview, Appellant candidly admitted that he believed the person with whom he had texted was thirteen years old. The chat log and the messages contained on Appellant's phone further corroborate Appellant's admissions. Therefore, even though the dispute over whether Appellant had received the first age-related text message is the primary focus of Appellant's complaint that Agent Yon's challenged statements ("you knew she was thirteen," and "you came back and asked for sex") were improperly admitted, the chat log, the messages located on Appellant's phone, and Appellant's own admissions all independently established that Appellant knew that the person he had texted was thirteen and that he had solicited "her" for sex.

As we have discussed, the State presented an abundance of evidence of Appellant's guilt. Furthermore, the State did not emphasize Agent Yon's challenged statements during its case in chief or during its opening or closing arguments. Finally, the trial court twice admonished and instructed the jury to only consider Agent Yon's statements as "context" for Appellant's responses and not for the truth of the matters asserted in the challenged statements. Assuming, without deciding, that the jury even considered this evidence for any purpose in determining

Appellant's guilt or punishment, it is presumed that the jury follows the instructions of the trial court regarding the consideration of evidence. Therefore, any potential harm to Appellant, if any, would be further mitigated by the trial court's limiting instructions. *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011); *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996).

We have thoroughly reviewed the record before us and the factors stated above, and we are satisfied beyond a reasonable doubt that the admission of Agent Yon's challenged statements neither contributed to Appellant's conviction or punishment (he received a probated sentence) nor affected the integrity of the process. As such, the trial court did not commit reversible error when it admitted this evidence. Accordingly, we overrule Appellant's second issue.

C. *Limiting Instructions*

In his third issue, Appellant contends, and the State essentially concedes, that the trial court erred when it refused to include in its charge Appellant's proposed jury instruction regarding Agent Yon's challenged statements.

Jury charge error is subject to a harmless-error analysis. *See Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011). Because Appellant lodged a timely objection to the alleged charge error, we will reverse the trial court's judgment if there is a showing of "some harm" to Appellant. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). "Some" harm means "*any* harm, regardless of degree." *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). Nevertheless, the harm suffered must constitute actual, rather than theoretical, harm. *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Limiting instructions are governed by Rule 105 of the Texas Rules of Evidence, which provides that, "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a). Thus, a limiting instruction complies with Rule 105 where it restricts the jury's use of certain evidence so that it is considered only for its limited purpose. *See Walker v. State*, 300 S.W.3d 836, 851 (Tex. App.—Fort Worth 2009, pet. ref'd).

Generally, jury instructions should be given at the time that the evidence is admitted and should also be included in the trial court's charge. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Despite the requirement that the trial court should provide an additional limiting instruction in its charge to the jury, essentially as a reminder of its earlier oral instruction, juries are presumed to follow the trial court's instructions. *See Archie*, 340 S.W.3d at 741; *Williams*, 937 S.W.2d at 490. As we have said, the trial court twice admonished the jury during the trial that Agent Yon's statements could only be considered as context for Appellant's responses and not for the truth of the matters asserted in them. Therefore, it can be presumed that the jury complied with the trial court's instructions and considered Agent Yon's statements only for the purpose to which it was instructed, if it considered the evidence at all.

Assuming, without deciding, that the trial court erred when it refused Appellant's request to include his proposed jury instruction in the court's charge, any such error was harmless. When the trial court admitted the videotaped interview, it accommodated Appellant's request to instruct the jury as to the limited use and consideration of Agent Yon's statements. The trial court provided an additional

limiting instruction regarding the chat log and, again, admonished the jury that any statements made by Agent Yon were not to be considered for the truth of the matter asserted but, rather, were offered merely to place Appellant's statements into "context." Absent evidence to the contrary, which the record before us does not reflect, we must presume that the jury followed the instructions provided by the trial court during both phases of the trial. *See Archie*, 340 S.W.3d at 741; *Williams*, 937 S.W.2d at 490; *see also Chambers*, 580 S.W.3d at 154. Moreover, and as noted above, the complained-of statements were not offered by the State to prove that Appellant committed the charged offense, nor did the State focus on or emphasize these statements during any part of its case.

Based on the entire record and the applicable standards of review, we cannot conclude that the trial court's refusal to submit Appellant's requested jury instruction resulted in the degree of harm that would require a reversal. Therefore, we hold that the trial court's refusal to include a limiting instruction in its charge regarding the proper consideration of Agent Yon's statements was harmless. Accordingly, we overrule Appellant's third issue.

D. *Court-Appointed Attorney's Fees and Court Reporter's Fees*

In his fourth issue, Appellant contends—and the State agrees—that it was error to assess court-appointed attorney's fees and court reporter's fees against Appellant because he remained indigent.

On appeal, court costs are reviewed to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost. *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014). An indigent defendant cannot be taxed the cost of his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in

whole or in part. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *see* CRIM. PROC. arts. 26.05(g), 42A.301(b)(11) (discretionary conditions of community supervision) (West Supp. 2020). A defendant's financial resources and ability to pay are explicit elements that the trial court must consider in its determination of whether to order the reimbursement of such costs and fees. *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013); *Sharpe v. State*, 607 S.W.3d 446, 447–48 (Tex. App.—Texarkana 2020, no pet.) (holding that court-appointed attorney's fees were improperly assessed as a condition of community supervision that was not "contractual" in nature, i.e., not a result of a plea bargain). As such, a defendant who has been determined by the trial court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial resources occurs. CRIM. PROC. art. 26.04(p); *Cates*, 402 S.W.3d at 251.

Here, because the trial court had determined that Appellant was indigent, counsel was appointed to represent Appellant's interest in all proceedings in the case. Appellant also filed a motion for a free reporter's record, which the trial court granted. After Appellant's sentence had been imposed by the trial court, the trial court signed a Nunc Pro Tunc Judgment of Conviction and Order Granting Community Supervision. In the judgment, the trial court ordered Appellant to pay, as a condition of community supervision, "all costs of prosecution and court costs and fees authorized by law including costs of court appointed attorney . . . as certified by the District Clerk in the bill of costs." The district clerk subsequently submitted an amended bill of cost that charged and assessed against Appellant a $7,000 fee for the services of his court-appointed attorney and a court reporter's record fee in the amount of $3,381. Because there is nothing in the record to indicate that

(1) Appellant is no longer indigent or (2) that the trial court had made a subsequent determination that Appellant's circumstances had materially changed or that he had the financial resources or ability to pay for the costs of his court-appointed attorney's services or the court reporter's record that were assessed against him, we hold that these costs were improperly assessed. *See Cates*, 402 S.W.3d at 252; *Sharpe*, 607 S.W.3d at 447.

When the trial court clerk erroneously includes fees as costs, we should modify the bill of cost to remove the improperly assessed fees. Accordingly, we sustain Appellant's fourth issue and modify the trial court's judgment and the district clerk's bill of cost to delete the $7,000 court-appointed attorney's fees and the $3,381 court reporter's record fee.

### III. *This Court's Ruling*

As modified, we affirm the judgment of the trial court. *See* TEX. R. APP. P. 43.2(b).

W. STACY TROTTER

JUSTICE

June 10, 2021

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.