**Charles Lance TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00053–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Nov. 8, 2001.

Decided Feb. 6, 2002.

Clement Dunn, Longview, for appellant.

Frank Long, Franklin County, Hopkins County Dist. Atty., Martin E. Braddy, Asst. Dist. Atty., Sulphur Springs, for state.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Charles Lance Taylor appeals his conviction for intoxication assault arising from an automobile accident, contending the evidence adduced at trial was legally and

factually insufficient to support a finding of serious bodily injury.

On January 6, 1999, Taylor drove his car into the oncoming lane of traffic, resulting in a two-car collision. Misty Dawn Ragsdale, the driver of the other car, was trapped inside her car with her legs pinned up under the seat and the dashboard pushing in against her stomach. It took the fire department at least an hour to disassemble the vehicle and extract her. After she was extracted from the wreckage, she was transported to the emergency room with injuries to her left ankle, left arm, the big toe on her right foot, and her hipbone.

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979), and *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), and look to see whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In circumstantial evidence cases, if the fact finder's conclusion is warranted by the combined and cumulative force of all the incriminating circumstances, then the evidence is sufficient. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993). In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Lisai v. State*, 875 S.W.2d 35, 37 (Tex.App.-Texarkana 1994, pet. ref'd); *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.-Austin 1992, pet. ref'd, untimely filed). In both sufficiency reviews, the trier of fact may draw reasonable inferences and is the exclusive judge of the witnesses' credibility and the

weight to give their testimonies. *See Jones v. State*, 944 S.W.2d 642, 647–49 (Tex.Crim.App.1996); *Bruno v. State*, 922 S.W.2d 292, 293 (Tex.App.-Amarillo 1996, no pet.).

Intoxication assault requires serious bodily injury defined as "injury that creates a ... serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." Tex. Pen.Code Ann. § 49.07 (Vernon Supp.2001). The disfiguring and impairing quality of the injury is determined as the injury was inflicted, not taking into account the ameliorative effects of medical treatment. *See Brown v. State*, 605 S.W.2d 572, 575 (Tex.Crim.App. [Panel Op.] 1980), *overruled on other grounds*, *Hedicke v. State*, 779 S.W.2d 837, 840 (Tex. Crim.App.1989). Although surgery is not evidence of serious bodily injury per se, *Black v. State*, 637 S.W.2d 923 (Tex.Crim. App. [Panel Op.] 1982); *Webb v. State*, 801 S.W.2d 529 (Tex.Crim.App.1990), evidence regarding details of the surgery may support an inference regarding the character of the injury as inflicted. *Fleming v. State*, 987 S.W.2d 912, 917 (Tex.App.-Beaumont 1999), *pet. dism'd*, 21 S.W.3d 275 (Tex.Crim.App.2000) (a metal plate attached to victim's pelvis with six screws supported inference that at the time of injury, both the leg and the pelvis would have been unable to support victim's weight). To be considered "protracted," the loss or impairment should be continuing, drawn out, extended, lengthy, lingering, never-ending, or ongoing. *See Moore v. State*, 739 S.W.2d 347, 352 (Tex.Crim. App.1987). A period of recuperation does not elevate a bodily injury to a serious bodily injury. *Hernandez v. State*, 946 S.W.2d 108, 112 (Tex.App.-El Paso 1997, pet. ref'd) (injury requiring surgery and doctor's orders not to work for six weeks).

■ When an injury has received immediate medical treatment eliminating possible disfigurement or impairment, whether or not the injury constituted serious bodily injury as inflicted may have to be proven by circumstantial evidence from which the jury is allowed to make reasonable inferences. While expert testimony as to the extent and effects of the injuries regarding their disfiguring or impairing quality has been found sufficient, such testimony is not necessary where the injuries and their effects are obvious. *See Carter v. State,* 678 S.W.2d 155 (Tex.App.-Beaumont 1984, no pet.) (victim's testimony that bullet entered mouth, passed through tongue, and went into top of mouth was sufficient without need for expert testimony); *see also Hart v. State,* 581 S.W.2d 675 (Tex.Crim.App. [Panel Op.] 1979) (evidence that the stab wound to the stomach required twenty stitches was sufficient). The jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Tidmore v. State,* 976 S.W.2d 724, 730 (Tex.App.-Tyler 1998, pet. ref'd). If conflicting inferences exist, we must presume the trier of fact resolved any conflict in favor of the prosecution. *Id.*

The paramedic who arrived at the scene of the accident described Ragsdale's left ankle and leg as swollen and rotated or twisted outward. The physician confirmed that Ragsdale's left ankle bone was fractured as well as her left arm, but that the bones were still properly aligned. Ragsdale testified about an injury to her hip-bone that was making it difficult to sit or stand for long periods of time, but the physician did not treat Ragsdale for a hip injury. Her medical records state that no acute fracture was shown in the hip joints.

Ragsdale's big toe on her right foot was dislocated during the accident. She described it as pulled out of the socket and straight up in the air. She could not walk on that foot prior to medical treatment. The paramedic described the toe as deformed, out of place, and at a deformed angle. The initial treating physician determined that the toe was dislocated. She testified that the toe had been completely knocked off of the foot-bone, although it was an internal injury. She described it as similar to an injury you would get playing basketball, but also that it was significant and very painful when asked if it were just a jammed toe or a serious injury. After consulting with an orthopedic surgeon, the physician splinted the toe and transferred Ragsdale to the hospital because the surgeon thought he might have to relocate the toe surgically.

Ragsdale stayed in the hospital for three days, during which time the injuries were repaired. The ankle and arm were placed in casts, but there was no description of the procedure required to reposition the toe. Although Ragsdale testified that she was unable to use her arm, ankle, or foot for a period of time after the accident, the physician testified that Ragsdale had regained function of the toe by the time she visited the physician again in February. The physician testified that she did not know of any protracted problems Ragsdale experienced from the injuries and that she had no knowledge of any permanent disfigurement. She also testified that it was possible Ragsdale could have further complications with the toe in the form of pain and arthritis despite the medical treatment.

■ Viewing the evidence in the light most favorable to the prosecution, the toe injury and its immediate effects were obvious based on the evidence presented. Both Ragsdale and the paramedic de-

scribed the appearance of the toe injury. Ragsdale testified that she could not walk on that foot prior to treatment. The treating physician confirmed that the toe was dislocated and completely removed from the foot-bone. A conclusion regarding the long-term effects of the injury as inflicted would have been based on the circumstantial evidence provided, including the immediate effects of the injury, the physician's testimony that the injury was significant, that she called a surgeon to ask about appropriate treatment, and that the surgeon believed surgery would be required to reposition the toe. The combined and cumulative force of all of the evidence warranted the inference that such disfigurement or impairment would have been permanent or prolonged or that it would not have been permanent or prolonged. These inferences would have been reasonable and based on more than a modicum of evidence. When competing inferences are possible, it is assumed that the jurors resolved the inference in favor of the verdict. *See Tidmore*, 976 S.W.2d at 730. Therefore, the evidence was legally sufficient to support a finding of serious bodily injury.

In viewing all of the evidence, the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The physician's comment that the wound was the kind you could get playing basketball provides little information as to the severity of the injury, because both minor and severe injuries may result from playing such a sport. Additionally, the physician's testimony that she did not know of any protracted problems or permanent disfigurement Ragsdale experienced from the injuries when Ragsdale visited her a month after the accident pertains to the state of the injuries after medical treatment had been rendered. Whether an injury constitutes a serious bodily injury is determined as the injury was inflicted, not taking into ac-

count the ameliorative effects of medical treatment. *See Brown*, 605 S.W.2d at 572. Therefore, the evidence was factually sufficient to support the finding of serious bodily injury.

Because the evidence regarding the toe injury was sufficient to support the finding of serious bodily injury, the evidentiary sufficiency of the other injuries involved need not be discussed.

Taylor's single point of error is overruled, and the judgment of the trial court is affirmed.