**Affirmed and Opinion filed July 15, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-01016-CR

**RODNEY KEVIN COLEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1569075**

## OPINION

Appellant Rodney Kevin Coleman appeals his conviction for the third degree felony offense of assault of a family member, second offender. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A). In five issues, Appellant contends (1) the evidence is insufficient to support his conviction because the State failed to prove he "unlawfully, intentionally and knowingly committed assault causing bodily injury to a person with whom he had a dating relationship;" and (2) the trial court erred in finding two enhancement paragraphs true and sentencing him as a habitual offender.

We affirm.

## BACKGROUND

Appellant was indicted for family-violence assault as a second offender, *i.e*, with a prior conviction for assault of a family member. A three-day trial was held in November 2019. At trial, Officer Sinakone testified that he was driving on Highway 249 at approximately 6:30 a.m., when he observed a gray Nissan Altima "jerking" in front of him at a stop sign. Officer Sinakone pulled up next to the vehicle and saw Appellant slap and hit Complainant, Karen H., with his right hand. Appellant's window was rolled down and so was the widow on Officer Sinakone's truck. Officer Sinakone could hear Complainant scream "help" and "stop it." He called 9-1-1 to report his observations. He continued following the vehicle and observed it failed to maintain a single lane and swerved left and right into other lanes, so he believed there continued to be a struggle and fighting in the vehicle.

After a few miles, the vehicle turned onto FM 1960. The passenger door opened while the vehicle was still moving. Officer Sinakone observed half of Complainant's body hanging out the door and the other half was "still in the vehicle" and it "look[ed] like something [was] holding her from getting out the vehicle." Appellant lost control of the vehicle "and it kind of hit the curb, hopped onto the curb." Complainant rolled out onto the road, and Officer Sinakone called Complainant to get into his truck. He testified that Complainant told him she and Appellant were fighting, Appellant was hitting her, and she was concerned about Appellant getting to her apartment. After Complainant got into Officer Sinakone's truck, they followed Appellant's vehicle to an apartment complex. Another police officer was able to catch up to Appellant at the apartment complex gate, and Officer Sinakone assisted the police officer taking Appellant into custody. Appellant "was pretty aggravated or angry."

2

The audio recording of Officer Sinakone's 9-1-1 call was played for the jury at trial. He can be heard telling the 9-1-1 operator, among other things: "I see a male beating a woman; I can hear her say stop it; I keep seeing the car jerking like they're fighting inside the car while driving; they're not able to maintain a single lane; looks like they're fighting while driving and swerving all over the road; I can hear her screaming for help." Officer Sinakone can be heard asking Complainant: "What was going on, I mean it looked like he was hitting you." And Complainant confirmed: "He was hitting me; he was hitting me; . . . he's started from last night." Complainant did not testify at trial.

Deputy Batey, who responded to the scene to investigate, testified at trial. He stated that he first spoke to Officer Sinakone upon arriving and documented Officer Sinakone's statement in his offense report. He also spoke to Complainant who "was upset," "was crying," and "was worried about the situation." Deputy Batey testified that Complainant "had redness to the left side of her face" and the injuries he observed were "consistent with somebody being struck with a hand." Deputy Batey saw no "indication of injury to" Appellant.

Lastly, Sergeant Franks testified that he maintains the Securis phone system, which is available to Harris County jail inmates to make phone calls. He explained that it is Harris County jail policy to record every phone call inmates make and that each inmate is assigned a unique SPN[1] along with a four-digit code that must be entered in order to make a phone call. The State played a redacted recording of the phone call Appellant made to Complainant from jail on November 5, 2017. Appellant and Complainant can be heard telling each other, among other things, "I

___

[1] Sergeant Franks explained that a SPN "is a specific number assigned to a person. It's attached to their fingerprints. Every time they're arrested and go to jail, that number goes with them."

3

love you" and "I miss you" as well as calling each other "baby" and having a loving, supportive conversation. The phone call lasted approximately 20 minutes and was only one of 235 calls Appellant placed from his SPN to Complainant within a one-year period. Sergeant Franks confirmed that each of the phone calls between Appellant and Complainant were about 20 minutes long.

After hearing the evidence presented, the jury found Appellant guilty as charged. The trial court assessed Appellant's punishment at 25 years' confinement. Appellant filed a timely notice of appeal.

ANALYSIS

In his first four issues, Appellant challenges the sufficiency of the evidence to support his conviction. In his fifth issue, he challenges the legality of his punishment as a habitual offender. We begin by addressing Appellant's sufficiency challenge.

## I. Sufficiency of the Evidence

Appellant argues in his first three issues that the evidence is legally insufficient to support his conviction because the State failed to prove he (1) "unlawfully, intentionally, and knowingly" assaulted Complainant; (2) caused bodily injury to Complainant; and (3) had a dating relationship with Complainant. In his fourth issue, Appellant contends the evidence is legally insufficient to establish he had "a prior conviction for assault of a member of [his] household, as a statutory element of the offense and as alleged in the indictment, where the prior judgment of conviction failed to establish that the Complainant in that cause was a member of [his] household."

### A. Standard of Review and Applicable Law

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have

4

found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). The factfinder is the sole judge of the credibility of witnesses and the weight to be assigned to their testimonies, and we do not usurp this role by substituting our judgment for that of the factfinder. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017); *Dowling v. State*, 608 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2020, no pet.). When the record supports contradicting inferences, we presume the factfinder resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record. *Queeman*, 520 S.W.3d at 622; *see also Dowling*, 608 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

We assess a sufficiency challenge against the elements of the charged crime. *See Ramjattansingh*, 548 S.W.3d at 546. The Court of Criminal Appeals "set forth the modern Texas standard" for ascertaining what the elements of the charged crime are in *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). *Id.* To determine whether the State has met its burden to prove a defendant guilty beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge for the case to the evidence adduced at trial. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Malik*, 953 S.W.2d at 240. A hypothetically correct jury "charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

The "law as authorized by the indictment" means the statutory elements of the

5

offense as modified by the charging instrument. *Ramjattansingh*, 548 S.W.3d at 546. When a Texas statute lists more than one method of committing an offense, and the indictment alleges some, but not all, of the statutorily listed methods, the State is limited to the methods alleged. *Id*. at 547; *Thomas*, 444 S.W.3d at 8; *see also Cada v. State*, 334 S.W.3d 766, 773-74 (Tex. Crim. App. 2011). Although a hypothetically correct jury charge does not necessarily have to exactly track all of the allegations in the indictment, whether an unproved allegation is to be included in the hypothetically correct jury charge is determined by whether or not the variance between the allegation and proof is "material". *Ramjattansingh*, 548 S.W.3d at 547-48.

As applicable in this case, the third degree felony family-violence assault, second offender is defined in two related sections in Texas Penal Code Chapter 22, Assaultive Offenses. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A). A person commits an offense if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. *Id*. § 22.01(a)(1). The base level of this offense is a Class A misdemeanor. *Id*. § 22.01(b). However, section 22.01(b)(2)(A) raises the offense to a third degree felony if (1) the defendant commits the assault against a person who is a member of the defendant's family, who is a member of the defendant's household, or with whom the defendant has or has had a dating relationship; and (2) the defendant has a previous conviction for family violence. *Id*. § 22.01(a)(1), (b)(2)(A).

## B.    Bodily Injury

In his first issue, Appellant contends the evidence is insufficient to prove he caused Complainant bodily injury because (1) Complainant "did not receive a bruise or a cut," (2) Complainant did not testify "as to whether she suffered physical pain, illness, or any impairment of physical condition," and (3) "the deputy, who was not

6

a witness to the offense, admitted that the redness on the complainant's cheek could have been caused by a fall."

The Penal Code defines bodily injury as physical pain, illness, or any impairment of physical condition. *Id*. § 1.07(a)(8). This definition is purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching. *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989); *see also Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

Further, a factfinder may infer that a victim actually suffered physical pain, and no witness—including the victim—need testify that the victim felt pain. *See Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). A factfinder is "free to 'use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence.'" *Aguilar*, 263 S.W.3d at 434 (quoting *Taylor v. State*, 71 S.W.3d 792, 795 (Tex. App.—Texarkana 2002, pet. ref'd)). Thus, a "fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Garcia*, 367 S.W.3d. at 688. This includes inferring physical pain from an altercation itself even without direct evidence. *Aguilar*, 263 S.W.3d at 434.

Contrary to Appellant's assertion, Complainant was not required to testify "whether she suffered physical pain, illness, or any impairment of physical condition," and the State was not required to show that Complainant "receive[d] a bruise or a cut" to prove bodily injury. Based on the evidence presented, the jury

7

could have inferred that Complainant suffered pain. Officer Sinakone saw Appellant slap and hit Complainant with his right hand. Officer Sinakone testified he could hear Complainant scream "help" and "stop it" while she was riding with Appellant in the car. Complainant even decided to get out of the moving vehicle and run to Officer Sinakone's truck to flee from Appellant. Officer Sinakone also testified that Complainant told him she and Appellant were fighting and he was hitting her. Additionally, the jury could hear on the 9-1-1 recording that Complainant told Officer Sinakone that Appellant was hitting her. Although Deputy Batey generally agreed that "a red mark could be caused by" a fall, he testified that Complainant "had redness to the left side of her face" and the injuries he observed were "consistent with somebody being struck with a hand." Deputy Batey also stated that Complainant was upset and crying.

Based on the evidence in the record and considering the jury was the sole judge of the credibility of witnesses and was free to apply common knowledge and life experience when giving effect to the inferences that may reasonably be drawn from the evidence, we conclude the jury reasonably could have determined that Appellant was hitting Complainant causing her physical pain. *See Aguilar*, 263 S.W.3d at 434; *Arzaga*, 86 S.W.3d at 778. Accordingly, the evidence is legally sufficient to establish Complainant suffered bodily injury in this case, and we overrule Appellant's first issue.

### C.    *Mens Rea*

In his second issue, Appellant argues the evidence is insufficient to prove he "unlawfully, intentionally and knowingly assaulted the Complainant who was not present to testify" at trial. In that regard, Appellant complains that "[b]ased on (1) the failure of the Complainant to appear and testify, (2) the fact that this alleged 'fight' took place while the Appellant was driving, and (3) there was no explanation

8

as to who started it, it's quite possible that the Complainant was the culpable party, and that the Appellant was under attack by the Complainant."

However, Appellant does not explain why (1) Complainant's failure to testify at trial, (2) an allegation that Complainant may have started the fight, or (3) the fact that the fight took place while Appellant was driving renders the evidence insufficient to prove Appellant intentionally and knowingly assaulted Complainant. *See* Tex. R. App. P. 38.1(i). Nor does Appellant cite any authority that would support his apparent argument that evidence of Appellant's *mens rea* is legally insufficient unless Complainant testifies at trial and the State proves Complainant did not start the fight. *See id.* Moreover, although the State must prove each essential element of an offense beyond a reasonable doubt, it does not need to exclude every conceivable alternative to a defendant's guilt. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016).

Here, there is legally sufficient evidence that Appellant intentionally and knowingly assaulted Complainant. Evidence established that Officer Sinakone called 9-1-1 to report Appellant "was beating" Complainant. He observed Appellant slap and hit Complainant with his right hand. He testified that Complainant told him she and Appellant were fighting and that Appellant was hitting her. The 9-1-1 recording confirmed Officer Sinakone's testimony. Complainant can be heard telling Officer Sinakone: "He was hitting me; he was hitting me; he's started from last night." We conclude the jury reasonably could have found that Appellant intentionally and knowingly assaulted Complainant. Accordingly, legally sufficient evidence establishes Appellant's *mens rea*, and we overrule Appellant's second issue.

### D.    Dating Relationship

In his third issue, Appellant asserts the evidence is legally insufficient to

establish that he and Complainant had a dating relationship.

A dating relationship is defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." Tex. Fam. Code Ann. § 71.0021(b); *Sanchez v. State*, 499 S.W.3d 438, 441 (Tex. Crim. App. 2016). The existence of such a relationship is determined by considering (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the individuals involved in the relationship. Tex. Fam. Code Ann. § 71.0021(b). A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a dating relationship. *Id*. § 71.0021(c).

The State played for the jury the recording of a November 5, 2017 phone call Appellant placed to Complainant from the Harris County Jail to establish that he and Complainant had a dating relationship. Appellant contends this recording constitutes insufficient evidence to show a dating relationship because neither he nor Complainant "(1) stated how long they had been together or whether there was [an] upcoming 'anniversary,' (2) referred to each other as girlfriend, boyfriend, fiancee, husband or wife, or indicated that they had a 'dating relationship,' or (3) revealed the frequency or type of interaction between them in any terms." Appellant argues that, although Complainant and Appellant called each other "sweetie" and stated they loved and missed each other, "[i]t is not uncommon for complete strangers to refer to each other as 'sweetie' or for casual acquaintances to say they 'love' each other or 'missed' each other. People might say they love and miss a neighbor who's moved away, or anyone for that matter, without having been in a 'dating relationship' with them." According to Appellant, the evidence at most proves that the relationship was "a casual acquaintanceship or ordinary fraternization in a business or social context."

We reject Appellant's argument because the evidence is legally sufficient to establish that Appellant and Complainant had a dating relationship. Appellant and Complainant did not refer to each other as girlfriend and boyfriend or explicitly state they had a dating relationship during their phone call. However, from the content and tone of their conversation, the jury reasonably could have (1) concluded that Appellant and Complainant had an intimate, romantic relationship and (2) rejected Appellant's contention that they were just friends, neighbors, or casual acquaintances.

Appellant and Complainant discussed intimate and personal topics. The tenor and content of this intimate conversation supports a reasonable inference that Appellant and Complainant had a romantic relationship.

The State also introduced evidence that Appellant called Complainant with his SPN from jail 235 times between October 2017 and November 2018. During that same time period, Appellant also borrowed other inmates' SPNs to call Complainant an additional 62 times. Evidence showed that each of these phone calls was about 20 minutes long. Although the evidence does not indicate the exact length of Appellant's and Complainant's relationship, the jury reasonably could have concluded that their relationship was "of a romantic or intimate nature" considering they had nearly 300 verified and unobjected to conversations in a one-year period. *See* Tex. Fam. Code Ann. § 71.002(b); *Sanchez*, 499 S.W.3d at 441.

Based on the evidence admitted at trial by Appellant, we can conclude the jury reasonably found that Appellant and Complainant had a dating relationship. Accordingly, the evidence is legally sufficient to establish Complainant and Appellant had a dating relationship, and we overrule Appellant's third issue.

### E. Variance

In his fourth issue, Appellant contends the "evidence was insufficient to establish that [he] had a prior conviction for assault of a member of [his] household, as a statutory element of the offense and as alleged in the indictment, where the prior judgment of conviction failed to establish that the Complainant in that cause was a member of [his] household." Appellant argues that a variance exists between the allegations in the indictment and the proof presented by the State at trial.

A "variance" occurs when there is a discrepancy between the allegations in the indictment and the proof offered at trial. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *see also Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). There are two types of variances in a legal sufficiency analysis: material variances and immaterial variances. *Thomas*, 444 S.W.3d at 9. Immaterial variances do not affect the validity of a criminal conviction, and a hypothetically correct jury charge need not incorporate allegations that would give rise to only immaterial variances. *Id*. But a "material" variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient. *Ramjattansingh*, 548 S.W.3d at 547. This occurs when the charging instrument, as written, (1) fails to sufficiently inform the defendant of the charge against him to allow him to prepare an adequate defense at trial, or (2) subjects the defendant to the risk of being prosecuted later for the same crime. *Id*.

The Court of Criminal Appeals has recognized three different categories of variance: (1) "a statutory allegation that defines the offense, which is either not subject to a materiality analysis, or, if it is, is always material"; (2) "a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution, [which is] sometimes material"; and (3) "a non-statutory allegation that has nothing to do with the allowable unit of prosecution, [which is] never material". *Id*. In a sufficiency review, courts "tolerate variances as

long as they are not so great that the proof at trial 'shows an entirely different offense' than what was alleged in the charging instrument." *Id.* (quoting *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012)).

As we stated, a Class A misdemeanor family-violence assault is elevated to a third degree felony if (1) the defendant commits the assault against a person who is a member of the defendant's family, who is a member of the defendant's household, or with whom the defendant has or has had a dating relationship; and (2) the defendant has a previous conviction for family violence. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). Proof of a prior conviction for family-violence assault is an element of the offense and must be proven by the State beyond a reasonable doubt. *See Reyes v. State*, 314 S.W.3d 74, 81 (Tex. App.—San Antonio 2010, no pet.).

In this case, the State alleged in the indictment that Appellant "on May 31, 2007, in the 337[th] District Court of Harris County, Texas, in Cause No. 1097998, was convicted of Assault Family Member which was committed against a member of the Defendant's household." The State proved the prior conviction element by introducing a certified judgment of conviction for "Assault Family Member" in cause number 1097998 from the 337th Harris County District Court signed by Judge Mary Bacon on May 31, 2007. The judgment includes the following special finding: "Family Violence: The Court FINDS that Defendant was prosecuted for an offense under Title 5 of the Penal Code that involved family violence. TEX. CODE CRIM. PROC. art. 42.013."

Appellant seemingly contends that a material variance exists in this case because, even though the State proved (via a certified judgment) that Appellant was previously convicted of "Assault Family Member" as alleged in the indictment, the State did not prove that the "Assault Family Member" was "committed against a member of the Defendant's household." We reject Appellant's contention because

any variance is immaterial at best.

The burden of demonstrating materiality in the variance context rests with the Appellant. *Rogers v. State*, 200 S.W.3d 233, 237 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Santana v. State*, 59 S.W.3d 187, 194-95 (Tex. Crim. App. 2001)). Here, Appellant generally attacks the sufficiency of the evidence to show that the alleged "Assault Family Member" was "committed against a member of the Defendant's household." However, Appellant does not assert that the indictment failed to sufficiently inform him of the charge against him to allow him to prepare an adequate defense at trial or subjected him to the risk of being prosecuted twice for the same offense. Although the indictment included unnecessary language that the family-violence assault was "committed against a member of Defendant's household," it also provided the exact date, trial court, and cause number of the prior judgment being used to elevate the offense. Therefore, it is highly unlikely that Appellant did not realize which prior conviction the State used to elevate the charged offense. *See id.* (indictment allegation that defendant had a prior conviction for assault against a family member that resulted in bodily injury "unnecessarily added the 'bodily injury' language to the allegations," but defendant had sufficient notice of the charges against him when the indictment "also contained the month and cause number of the prior judgment"). Additionally, the superfluous allegation in the indictment in this case does not subject Appellant to the risk of being prosecuted later for the same crime. The specific, additional language in the indictment that the family-violence assault was "committed against a member of Defendant's household" does not define or help define the allowable unit of prosecution. *See Ramjattansingh*, 548 S.W.3d at 547.

We conclude that any variance between the indictment and the proof at trial is immaterial, should be disregarded, and does not affect our sufficiency review and

the validity of the conviction. *See Thomas*, 444 S.W.3d at 9; *Gollihar*, 46 S.W.3d at 257-58. Accordingly, we overrule Appellant's fourth issue.

## II. Punishment as Habitual Offender

In his fifth issue, Appellant contends the "trial court erred in finding the two enhancement paragraphs true and sentencing [him] as a habitual offender, where the two prior convictions could be used to elevate the underlying alleged misdemeanor assault to a third degree felony under Texas Penal Code Sec. 22.01(b)(2)(A), and therefore, could not [be] used for enhancement of punishment under Texas Penal Code Sec. 12.42(d)."

A defendant found guilty of an unenhanced third degree felony cannot be sentenced to more than ten years' imprisonment in the Texas Department of Criminal Justice. Tex. Pen. Code Ann. § 12.34(a). However, under the habitual offender statute, if it is shown on the trial of a felony offense "that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final," the punishment range is a term of "life, or for any term of not more than 99 years or less than 25 years." *Id*. § 12.42(d).

The State indicted Appellant for family-violence assault as a second offender, which is a third degree felony based on the State's indictment allegation that Appellant had a prior conviction for family-violence assault. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A). The State also included two punishment enhancement paragraphs in the indictment, alleging that Appellant had been convicted of felony assault involving family violence in 2010 and 2013. *See Reyes*, 314 S.W.3d at 80 (citing *Brooks v. State*, 957 S.W.2d 30, 32 (Tex. Crim. App. 1997)). With these two additional prior felony allegations, the State enhanced Appellant's possible punishment range from that of a third degree felony to a term of "life, or for any

term of not more than 99 years or less than 25 years" under the habitual offender statute. *See* Tex. Penal Code Ann. § 12.42(d). A jury convicted Appellant of third degree felony family-violence assault, second offender. The trial court found the two habitual offender enhancement paragraphs true and assessed Appellant's punishment at 25 years' confinement.

Appellant attacks the legality of his punishment by the trial court as a habitual offender. He asserts that because either of the two prior felony convictions for enhancement could have been used to elevate the Class A misdemeanor family-violence assault to a third degree felony under section 22.01(b)(2)(A), these two prior convictions cannot be used to enhance his punishment as a habitual offender. To support his assertion, Appellant cites *Rawlings v. State*, 602 S.W.2d 268 (Tex. Crim. App. [Panel Op.] 1980), and *Edwards v. State*, 313 S.W.2d 618 (Tex. Crim. App. 1958).

Appellant's reliance on these cases is misplaced. In *Rawlings*, the defendant was convicted of felony theft of property valued at less than $200, and his punishment was enhanced by proof of an additional prior felony theft conviction under Texas Penal Code section 12.42(a) to twenty years imprisonment. *Rawlings*, 602 S.W.2d at 269. The former version of the theft statute provided that an offense is a felony of the third degree if "the value of the property stolen is less than $200 and the defendant has been previously convicted two or more times of any grade of theft." *Id*. at 270. The defendant argued that the former version of Texas Penal Code section 31.03(d)(4)(C) "is a specific statute which alone governs the enhancement of misdemeanor theft offenses to the exclusion of sec[tion] 12.42(a)." *Id*. at 269. In agreeing with the defendant's argument, the Court of Criminal Appeals reasoned:

> Under this statutory scheme, theft of property having a value of less than $200.00 ordinarily constitutes a misdemeanor, but may constitute a third or second degree felony in some circumstances. Sec. 31.03(d)(4)

16

and (d)(6), supra. One of these aggravating circumstances is the defendant's prior record of theft convictions: if the defendant has been previously convicted two or more times of any grade of theft, a subsequent conviction for theft of less than $200.00 constitutes a third-degree felony. Sec. 31.03(d)(4)(C), supra. When this subsection is construed according to its fair import, . . . it is clear that a defendant's prior theft convictions, regardless of their number or degree, cannot serve to enhance the punishment for a subsequent theft of less than $200.00 beyond that of a third-degree felony. Thus, the punishment for third-degree felony theft under Sec. 31.03(d) (4)(C), supra, may not be enhanced pursuant to Sec. 12.42(a) or (d) by proof of one or more additional prior felony theft convictions. To this extent, Sec. 31.03(d)(4)(C), supra, constitutes a special enhancement statute which controls over the provisions of Sec. 12.42, supra.

*Id*. at 270.

The court reversed the judgment and held that the punishment for felony theft of property with a value of less than $200 may be enhanced under section 12.42(a) or (d) only if the prior felony convictions used for that purpose are for an offense other than theft, or stated conversely, prior felony theft convictions may not be used to enhance the punishment for felony theft of property having a value of less than $200 pursuant to section 12.42(a) or (d). *Id*. at 269.

We find *Rawlings* inapplicable because section 22.01 does not contain even remotely similar language to that in the former theft statute. Section 22.01 contains no language stating that the offense is enhanced to a third degree felony if a defendant has been convicted of one or more family-violence assaults. Instead, it states that a family-violence assault can be elevated to a third degree felony if the State proves a defendant "has been previously convicted of *an* offense" of family-violence assault. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A) (emphasis added). There is no language in section 22.01 prohibiting punishment enhancement as a habitual offender under section 12.42(d) if the State proves a defendant has multiple convictions for family-violence assault.

17

In *Edwards*, the Court of Criminal Appeals held that a prior felony conviction for driving while intoxicated could not be used to enhance a subsequent felony conviction for the same offense by applying the former penal code general enhancement provisions from which current sections 12.42(a) and (d) are derived. *Edwards*, 313 S.W.2d at 618-19. The former penal statute for the subsequent offense of driving while intoxicated provided specific language prohibiting punishment enhancement under general enhancement statutes (like current section12.42(d)), if a defendant had prior convictions for driving while intoxicated:

> " . . . shall for *each and every subsequent such violation* be guilty of a felony; and upon conviction shall be punished by a fine of not less than One Hundred ($100.00) Dollars nor more than Five Thousand ($5,000.00) Dollars or confinement in the county jail not less than ten (10) days nor more than two (2) years, or by both such fine and imprisonment, or by confinement in the state penitentiary not to exceed five (5) years."

*Id*. at 619. The Court of Criminal Appeals determined that "it was the intention of the Legislature to enact a special statute which alone provides the punishment to be assessed" for subsequent convictions for driving while intoxicated. *Id*.; *see Rawlings*, 602 S.W.2d at 270.

*Edwards* is inapposite because there is nothing in section 22.01 to indicate that punishment for subsequent family-violence assaults is governed by that section alone, thereby barring enhancement under the habitual offender statute. Appellant contends that "section 22.01(b)(2)(A) constitutes a special enhancement statute with regard to Assault offenses, which controls over the provisions of Sec. 12.42(d) of the Texas Penal Code and that the trial court erred in finding the two enhancement paragraphs true and sentencing the Appellant as a habitual offender." However, except for citing *Rawlings* and *Edwards*, Appellant presents no argument to support his contention and, as we explained, these two cases are inapplicable. There is

nothing in the language of section 22.01(b)(2)(A) from which we could conclude that it constitutes a special enhancement statute that trumps the habitual offender statute.

Additionally, appellate courts have implicitly approved using prior family-violence assault convictions to enhance punishment for a third degree felony conviction for family-violence assault under section 12.42(d). *See Hunter v. State*, 513 S.W.3d 638, 641-42 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (punishment for third degree felony conviction for family-violence assault enhanced under section 12.42(d) with prior conviction for family-violence assault and prior conviction for aggravated assault); *Salas v. State*, No. 02-20-00028-CR, 2020 WL 6325817, at *2 (Tex. App.—Fort Worth Oct. 29, 2020, pet. ref'd) (mem. op. not designated for publication) (punishment for third degree felony conviction for family-violence assault enhanced under section 12.42(d) with two prior family-violence assault convictions); *Guerrero v. State*, No. 03-10-00218-CR, 2011 WL 2176825, at *1, 5 (Tex. App.—Austin June 3, 2011, no pet.) (mem. op., not designated for publication) (punishment for third degree felony conviction for family-violence assault enhanced under section 12.42(d) with two prior family-violence assault convictions).

Accordingly, we conclude that section 22.01(b)(2)(A) is not a special statute for enhancement purposes that supersedes enhancement under the habitual felony offender statute, and we overrule Appellant's fifth issue.

## CONCLUSION

Having overruled Appellant's five issues, we affirm the trial court's judgment.

/s/      Meagan Hassan
            Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.
Publish — Tex. R. App. 47.2(b).

20