# NO. 12-24-00064-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JEREMY CHRISTIAN MOFFITT,* **APPELLANT** | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* **APPELLEE** | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Jeremy Christian Moffitt, appeals his conviction for evading arrest causing serious bodily injury. In two issues, he challenges the sufficiency of the evidence and the imposition of duplicative court costs. We modify the trial court's judgment as to the duplicative court costs and affirm as modified.

## BACKGROUND

On September 23, 2020, as part of his bond conditions for a preexisting charge of unlawful possession of a firearm by a felon, Appellant appeared for a meeting with his pretrial release officer at the Smith County Community Supervision and Corrections Department. While there, Appellant learned of a warrant for his arrest for violating bond conditions. When Deputy Marsha Smith of the Smith County Sheriff's Office attempted to take Appellant into custody, he shoved her and fled. Deputy Michael Taylor of the Smith County Sheriff's Office, a security officer in the building, heard someone yell that there was a "runner" attempting to escape. Taylor saw Appellant running and stepped into his path. Appellant ran directly into Taylor, and the two men engaged in a struggle, causing Taylor to smash his left knee into a nearby vending

machine and fall to the floor. Taylor could not stand following the collision and was taken to the hospital by ambulance.

Appellant was subsequently indicted for the offense of evading arrest causing serious bodily injury. He pleaded "not guilty," and this matter proceeded to a jury trial in February 2023.

Deputy Taylor testified that the emergency room physician examined an x-ray of his knee, diagnosed the injury as "bad bruising," and discharged Taylor the same day with instructions to ice his knee and use crutches. However, Taylor's leg swelled badly on the ride home, and he realized that the injury was likely more severe than just bruising. Therefore, the following day, Taylor saw Dr. Kevin Scully, a physician who regularly handled job-related injuries for county employees. Dr. Scully ordered an MRI, which revealed that Taylor's patella tendon was completely torn. Subsequently, Dr. Patrick Wupperman performed surgery on Taylor's knee to reconnect the torn tendons.[1] Taylor participated in lengthy post-surgery rehabilitation for his knee injury, and experienced pain throughout the recovery process that persisted at the time of trial. Before the injury, he could run and work an entire day while standing, but he could no longer do those activities. Taylor estimated that on a good day, his knee was about sixty percent as functional as it was before the injury, but that he could not perform his previous job duties.

Lieutenant Matt Lazarine, supervisor for security personnel at Smith County facilities, testified that at the time of trial, Deputy Taylor worked in the video monitoring room at the courthouse, a position Lazarine created for him after researching the security protocols employed at other courthouses. Taylor could not return to his previous position because of limited mobility in his left knee and leg, which impaired his ability to walk up a flight of stairs, walk to the car, or bend down. Taylor was unable to re-qualify with a firearm until October of 2022 because he could not previously get up and down the steps at the gun range.

Dr. Wupperman testified that he first examined Taylor on September 24, 2020, the day after he sustained the injury. He reviewed the MRI results and diagnosed Taylor with a patella tendon avulsion, in which the tendon had completely torn away from the bottom of the kneecap. He opined that some sort of great force would be needed to detach the tendon from the knee,

---

[1] Taylor testified that between the incident with Appellant and his surgery, he had no other major accidents or injuries to his knee.

which could come from jumping, falling from a height, or participating in wrestling or a physical fight. Such tendon tears are generally an "all or nothing" situation, and he did not believe that Taylor's injury resulted from a partial tear that worsened between the injury and Taylor's emergency room visit. Dr. Wupperman characterized the emergency room doctor's misdiagnosis of Taylor's patella tendon tear as laughable. Specifically, the doctor should have asked Taylor to do a simple "straight leg raise," which would immediately reveal the injury. Further, the injury was discernible from the x-ray because bone fragments were present and the patella bone was displaced.

Taylor required surgery to reattach the tendon to his patella; otherwise, he could not walk normally. A person with a detached patella tendon could potentially walk if he kept his leg perfectly straight, but putting any weight on the leg with the knee even slightly bent would cause a fall. Dr. Wupperman described the procedure for surgical reattachment of the tendon, which he performed on October 7. Although Taylor could extend his knee and the tendon was no longer torn, the surgery was not entirely successful, because Taylor could not walk without a limp, run, or generally do what he could do before. Taylor "still had pretty poor function" at his last office visit in March of 2022, and despite his compliance with physical therapy and rehabilitation, Dr. Wupperman believed Taylor would never regain his pre-injury functionality.

The available sentencing range was increased to that of a second degree felony because of an enhancement paragraph to which Appellant pleaded "true." The jury found Appellant "guilty" of the charged offense and imposed a sentence of twenty years' imprisonment. [2] This appeal followed.

## LEGAL SUFFICIENCY OF EVIDENCE

In his first issue, Appellant contends that the evidence is insufficient to support a finding beyond a reasonable doubt that Taylor suffered serious bodily injury.

## Standard of Review

The *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a

---

[2] Appellant was also tried for (and convicted of) aggravated assault against a public servant, assault on a peace officer, and unlawful possession of a firearm by a felon. This court disposed of these cases in a separate appeal. *See Moffitt v. State*, No. 12-23-00109-CR, 2023 WL 6631852, at *1 (Tex. App.—Tyler Oct. 11, 2023, no pet.) (mem. op., not designated for publication).

criminal offense that the state is required to prove beyond a reasonable doubt. 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); **Brooks v. State**, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See* **Jackson**, 443 U.S. at 315–16, 99 S. Ct at 2786–87; *see also* **Escobedo v. State**, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. **Whatley v. State**, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); **Brooks**, 323 S.W.3d at 898–99. The trier of fact is the sole judge of the credibility of the witnesses and can believe all, some, or none of the testimony presented, and a reviewing court affords almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility. **Chambers v. State**, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also* **Lancon v. State**, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. **Jackson**, 443 U.S. at 326, 99 S.Ct. 2781; **Clayton v. State**, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See* **Malik v. State**, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." **Id.**

**Applicable Law**

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a) (West 2023). The offense becomes a third-degree felony if an individual suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight. **Id.** § 38.04 (b)(2)(B). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." **Id.** § 1.07(a)(8) (West

4

2023). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07(a)(46).

**Analysis**

The parties do not dispute that Deputy Taylor suffered bodily injury as a result of Appellant's attempt to evade arrest. However, Appellant argues that there is insufficient evidence that Taylor suffered *serious* bodily injury. Whether an injury constitutes serious bodily injury is determined on a case-by-case basis. *See Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987) (*abrogated on other grounds by Blea v. State*, 483 S.W.3d 29, 35-6 (Tex. Crim. App. 2016)). The relevant issue is the disfiguring and impairing quality of the injury as it was inflicted, and not after the effects have been ameliorated or exacerbated by medical treatment. *Webb v. State*, 801 S.W.2d 529, 532 (Tex. Crim. App. 1990). That is, courts examine whether the complainant's injury, *without* medical intervention, would have caused permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. *Id.*

The jury heard Dr. Wupperman testify that it was extremely unlikely that Taylor's injury began as a partial tear that was aggravated to become a complete tear, stating that such injuries were usually an "all or nothing" occurrence. Therefore, the jury could reasonably have believed that Taylor suffered a complete patella tendon tear during his struggle with Appellant. Further, Dr. Wupperman opined that a person with this injury would never be able to walk normally and would fall immediately if he tried to put weight on the leg with the knee even slightly bent. *See Fleming v. State*, 987 S.W.2d 912, 917 (Tex. App.—Beaumont 1999, pet. dism'd) (evidence that victim's injured leg and hip "would have been unable to support [his] weight if he were to attempt any ambulatory movements" sufficient for finding of serious bodily injury). We also note Dr. Wupperman's testimony that in most cases of patella tendon avulsion, even *with* surgical intervention, the patient never regains full functionality. Additionally, the jury heard Taylor's statement that immediately after his altercation with Appellant, he could not stand or walk unassisted. Moreover, in the approximately two weeks between the injury and undergoing surgery to reattach the torn tendon, Taylor required crutches to ambulate. *See Hendrix v. State*, No. 06-15-00148-CR, 2017 WL 1055679, at *3 (Tex. App.—Texarkana Mar. 20, 2017, pet. ref'd) (mem. op., not designated for publication) (victim's inability to stand or walk at the time

5

of injury was impairment sufficient for finding of serious bodily injury).  Despite the reattached tendon and his compliance with the prescribed post-surgical course of rehabilitation, Taylor still experienced knee pain and could neither run nor stand for a full workday at the time of trial, approximately two years after the injury.  *See **Bell v. State***, No. 11-22-00045-CR, 2023 WL 4373323, at *4 (Tex. App.—Eastland July 7, 2023, no pet.) (mem. op., not designated for publication) (victim's testimony of continued impairment in broken foot, one year after injury and following surgery, supported inference of serious bodily injury).  And Dr. Wupperman opined that Taylor was unlikely to experience any future improvement to the functionality of his knee.

A jury is free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence presented to it in order to conclude that a particular injury constitutes "serious bodily injury."  ***Wade v. State***, 663 S.W.3d 175, 185 (Tex. Crim. App. 2022).  In this case, the cumulative force of the evidence warranted an inference by the jury that Taylor's injury as inflicted, without the benefit of medical treatment, would have resulted in permanent or prolonged impairment to the function of his knee and leg.  *See **Webb***, 801 S.W.2d at 532; *see also **Taylor v. State***, 71 S.W.3d 792, 796 (Tex. App.—Texarkana 2002, pet. ref'd).  Consequently, we conclude that the evidence presented at trial was legally sufficient to support a finding that Taylor suffered serious bodily injury.  We overrule Appellant's first issue.

### DUPLICATIVE COURT COSTS

In his second issue, Appellant argues (and the State concedes) that the imposition of court costs and fees in this case was duplicative and improper.  We agree.

## Applicable Law

Article 101.073 of the Texas Code of Criminal Procedure states that "[i]n a single criminal action in which a defendant is convicted of two or more offenses ..., the court may assess each court cost or fee only once against the defendant."  TEX. CODE CRIM. PROC. ANN. art. 102.073(a) (West 2023).  The statute further provides that "each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions."  *Id.* art. 102.073(b).

In this context, we construe the phrase "in a single criminal action" to mean in a single trial or plea proceeding. *Hurlburt v. State*, 506 S.W.3d 199, 203 (Tex. App.—Waco 2016, no pet.).

**Analysis**

It is undisputed that Appellant was convicted of four offenses (including the evading offense at issue in this appeal) in a single criminal action. In his previous appeal before this Court, in which the evading arrest offense was not before us, we found that "the trial court properly assessed costs and fees of $251.50 against Appellant in the aggravated assault of a public servant case, but… erred by assessing the same costs against Appellant for the offenses of unlawful possession of a firearm by a felon (trial cause number 114-1210-19) and the assault of a peace officer (trial cause number 114-0070-21)." *Moffitt v. State*, No. 12-23-00109-CR, 2023 WL 6631852, at *7 (Tex. App.—Tyler Oct. 11, 2023, no pet.) (mem. op., not designated for publication). Subsequently, we modified the judgments of conviction and accompanying orders to withdraw funds in both the unlawful possession of a firearm by a felon and assault of a peace officer cases. *Id.* at *7-8.

The judgment of conviction in this case also lists court costs totaling $251.50. The bill of costs assessed the following costs and fees: $5 arrest fee, $40 clerk of the court fee, $133 consolidated court costs fee, $4 county and district court technology fund, $1 county jury fund, $25 county records management and preservation fee, $25 county specialty court account, $10 courthouse security fund, $0.60 judicial support fee (county), $5.40 judicial support fee (state), and $2.50 records management and preservation fee (all of which total $251.50). These are the same fees assessed in the respective bills of costs for the other three cases. As mentioned above, the trial court was authorized to assess each court cost and fee against Appellant only once. *See* TEX. CODE CRIM. PROC. ANN. art. 102.073(a). We sustain Appellant's second issue.

Evading arrest causing serious bodily injury is a third-degree felony. TEX. PENAL CODE ANN. § 38.04(b)(2)(B). Therefore, the "highest category of offense" among Appellant's four convictions remains aggravated assault of a public servant (for which this Court previously affirmed the imposition of court costs) and all court costs assessed should have only been assessed in that judgment. *See* TEX. CODE CRIM. PROC. ANN. art. 102.073(b); *Moffitt*, 2023 WL 6631852, at *7. We therefore modify the judgment for Appellant's conviction of evading arrest causing serious bodily injury, and the attached order to withdraw funds, to delete the assessment of costs in the amount of $251.50. *See* TEX. R. APP. P. 43.2(b) ("The court of appeals may ...

modify the trial court's judgment and affirm it as modified."); ***Cates v. State***, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (concluding that when trial court improperly included amounts in assessed court costs, proper remedy is to reform judgment to delete improper fees).

## DISPOSITION

Having overruled Appellant's first issue, but sustained Appellant's second issue, we ***modify*** the trial court's judgment and attached withdrawal order to delete the assessment of $251.50 in court costs. We ***affirm*** the trial court's judgment ***as modified***.

JAMES T. WORTHEN
Chief Justice

Opinion delivered September 30, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 30, 2024**

**NO. 12-24-00064-CR**

**JEREMY CHRISTIAN MOFFITT,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0071-21)

---

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment and attached withdrawal order of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment and attached withdrawal order of the court below be **modified** to delete $251.50 in court costs; in all other respects, the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*