**Affirmed and Memorandum Opinion filed April 27, 2023.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-21-00736-CR

---

### CHARLES EARL MARTIN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Cause No. 19041**

---

## MEMORANDUM OPINION

Appellant Charles Earl Martin appeals his conviction for second degree felony assault of a family/household member. *See* Tex. Penal Code Ann. §§ 12.42(a); 22.01(a)(1), (b)(2)(A). In four issues, Appellant contends (1) the evidence is insufficient to prove that he intentionally, knowingly, or recklessly caused Complainant bodily injury, and that he is the same person who had been convicted of a prior assault offense against a member of his family or household; and (2) the trial court erroneously admitted several pieces of evidence. We affirm.

BACKGROUND

Appellant was indicted for third degree felony assault of a household member or a person with whom Appellant has or has been in a dating relationship, with a prior conviction for assault of a family or household member pursuant to Texas Penal Code section 22.01(a)(1), (b)(2)(A). The indictment contained a punishment enhancement paragraph alleging two additional prior convictions for "the felony offense Assault Family/Household Member w/Prev Conv" and "the felony offense of Assault Family Violence Enhanced." A three-day trial was held in December 2021.

At trial, Complainant testified that Appellant had been living in her trailer together with her kids and dad. She testified that she had known Appellant for about ten years. They had been friends at first and eventually began an on-again-off-again dating relationship. Complainant stated that she had called 9-1-1 in September 2019 to ask for police assistance because she and Appellant had "a disagreement or something like that." Because Complainant was a reluctant and somewhat uncooperative witness, she at first testified that she could not remember if she sustained injuries during the argument. When the State showed her several photos, she acknowledged that the photos were taken by police during the investigation and "fairly and accurately represent what [she] looked like the night that the police came and responded" to her 9-1-1 call. The photos show Complainant having a bloody lip and "dry blood all around [her] mouth" as well as redness on her chest. She stated she could not remember if she had been struck in the mouth by Appellant or what she had told the police that night.

After Complainant refreshed her memory by reading the statement she wrote at the time the police came to her home, she testified that she told the officers that Appellant "held me down and big faced me with his hands (indicating)."

Complainant made "a motion in front of [he]r face" to show what she meant by "big faced" and added: "I guess when somebody, you know, push you out the way that way." She also testified that she and Appellant were in "a tussle" which started over gas money in the bedroom. She stated the altercation "started off [by] pushing each other," but she unequivocally stated that Appellant "gave the first strike" to her face. According to Complainant, her 15-year-old son tried to separate her and Appellant. Complainant admitted that during the altercation, Appellant caused her bloody lip and the redness on her chest. She affirmed that she is "absolutely sure that" Appellant "caused that" redness.

Following Complainant's testimony, the State published an audiotape of Complainant's 9-1-1 call. Complainant can be heard asking for police to be sent to her home because her boyfriend, Appellant, "was pushing on me and fighting on me." Complainant stated that she and Appellant had an argument over gas money. When her son tried to pull Appellant off her, Appellant pushed her son. Complainant stated that Appellant drove off in a car "not even a minute — two minute[s] ago."

Officer Alex Saenz of the Brenham Police Department testified that he drove to Complainant's home on September 25, 2019, to assist with an incoming domestic disturbance call. When he arrived at the scene, he observed Complainant and her teenage son outside. Officer Saenz testified that Complainant had a bloody lip and "the injuries on [Complainant] appear[ed] consistent with her allegations of what had happened." He recognized the photos of Complainant admitted at trial and confirmed that the injuries visible on the photos "were consistent with some type of an assault." He testified that her "bloody lip and some redness around her neck and chest area" are injuries "consistent with an assault." He also testified that Complainant had complained she had been punched in the chest and it was his

3

"testimony that [Complainant] . . . was hit in the face in the lips."

The police located Appellant quickly and Officer Saenz interviewed him about 30 to 45 minutes after the alleged assault occurred. Appellant admitted to Officer Saenz that he and Complainant had an argument over gas money, that Complainant's son tried to intervene in the argument, and that Appellant "plac[ed] his hands on [Complainant] to hold her down." But Appellant denied striking Complainant in the face.

Officer Saenz also testified that, "as part of [his] investigation[,] . . . there [is] a database that law enforcement has access to both throughout the state or nationwide that helps provide law enforcement with different identifying information of individuals, whether it be their name, date of birth, things like that." He testified that, in addition to the name and date of birth, the database contains individuals' identifying information like "any government-issued IDs, such as driver's licenses or just ID cards. If they have an FBI number, that'll be entered, Social Security numbers, if they have any identifying marks such as tattoos, scars, any aliases." He stated that he ran Appellant's "name through that nationwide or statewide database" which showed Appellant's "official date of birth," his "full name" as Charles Earl Martin, and his State ID number (TX06392940); "[h]is height was listed as 6'1," and "[h]is weight was listed at 235" pounds.

Defense counsel called Appellant's sister as a witness but only elicited testimony that she had known Complainant for 15 to 20 years and that she had seen Complainant become upset on "a couple" occasions. The defense also called Complainant's teenage son to the stand, but he refused to answer any questions.

After hearing the evidence presented, the jury found Appellant guilty of the third degree felony "offense of ASSAULT FAMILY/HOUSEHOLD MEMBER WITH PREVIOUS CONVICTION, as alleged in the indictment." Appellant

4

elected to have the trial court assess his punishment. During the punishment phase, the State offered and the trial court admitted documents relating to Appellant's criminal history, including several charging documents, plea paperwork, judgments granting/revoking probation, and judgments of conviction for prior offenses Appellant committed between 2000 and 2021. Appellant did not present any mitigating evidence. The trial court sentenced Appellant to 20 years' confinement. Appellant filed a timely notice of appeal.

ANALYSIS

On appeal, Appellant challenges in four issues the sufficiency of the evidence to support his conviction and the admission of numerous pieces of evidence. We begin by addressing Appellant's sufficiency challenges.

## I. Sufficiency of the Evidence

In his first and second issues, Appellant contends the evidence is insufficient to prove that he (1) intentionally, knowingly, or recklessly caused Complainant bodily injury; and (2) is the same person who had been convicted of a prior assault offense against a member of his family or household.

### A. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App.

5

2021) (quoting *Jackson*, 443 U.S. at 319). Therefore, the jury is the sole judge of the credibility of witnesses and the weight to be assigned to their testimonies, and we do not usurp this role by substituting our judgment for that of the jury. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). When considering a claim of evidentiary insufficiency, we must keep in mind that a jury may choose to believe or disbelieve all, some, or none of the evidence presented. *Edward*, 635 S.W.3d at 655.

"Our review of 'all of the evidence' includes evidence that was properly and improperly admitted." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). While the factfinder may not base its decision on mere speculation or unsupported inferences, it may draw reasonable inferences from the evidence. *See Edward*, 635 S.W.3d at 655. The evidence is sufficient to support a conviction, and therefore a jury's verdict is not irrational, if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* at 655-56 (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). When the record supports contradicting inferences, we must presume the factfinder resolved any such conflicts in favor of the verdict and defer to that determination, even if not explicitly stated in the record. *See id.* at 656; *Queeman*, 520 S.W.3d at 622; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

We assess a sufficiency challenge against the elements of the charged crime. *See Ramjattansingh*, 548 S.W.3d at 546. The Court of Criminal Appeals "set forth the modern Texas standard" for ascertaining what the elements of the charged

6

crime are in *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). *Id.* To determine whether the State has met its burden to prove a defendant is guilty beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge for the case to the evidence adduced at trial. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Malik*, 953 S.W.2d at 240.

As applicable in this case, Appellant was charged with felony assault causing bodily injury, which was elevated from a Class A misdemeanor to a third degree felony based on (1) Complainant being a member of Appellant's household or a person with whom Appellant has or has had a dating relationship; and (2) Appellant's prior conviction for assault against a member of his family or household. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A). Section 22.01(b)(2) provides that a person commits a third degree felony if he: (1) commits bodily injury assault against "a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code" — meaning a family member, a member of the defendant's household, or a person with whom the defendant has or has had a dating relationship; and (2) the State proves that the defendant has a previous conviction for one of several enumerated types of offenses, including assaultive offenses, against a person with whom the defendant has or has had a dating relationship, a family member, or a member of the defendant's household. *Id.* § 22.01(b)(2)(A). Because Appellant has not challenged whether Complainant was a member of his household, a family member, or a person with whom he had a dating relationship, we do not address that statutory element in our analysis below.

### B. Bodily Injury

In his first issue, Appellant argues the evidence is insufficient to prove that

he intentionally, knowingly, or recklessly caused Complainant bodily injury because she testified that (1) "Appellant had 'big faced' her," but she did not "clearly describe in words what that phrase actually meant, and/or whether being 'big faced' amounted to an assault;" and (2) Appellant caused redness on her chest and her bloody lip, but the State failed to inquire how "Appellant caused those conditions to occur, and whether that cause amounted to an assault."

The Penal Code defines bodily injury as physical pain, illness, or any impairment of physical condition. *Id*. § 1.07(a)(8). This definition is purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching. *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (en banc); *see also Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

Further, a factfinder may infer that a victim actually suffered physical pain, and no witness — including the victim — need testify that the victim felt pain. *Coleman v. State*, 631 S.W.3d 744, 751 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd); *see also Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). A factfinder is "free to 'use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence.'" *Aguilar*, 263 S.W.3d at 434 (quoting *Taylor v. State*, 71 S.W.3d 792, 795 (Tex. App.—Texarkana 2002, pet. ref'd)). Thus, a "fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Garcia*, 367

8

S.W.3d. at 688. This includes inferring physical pain from an altercation itself even without direct evidence. *Coleman*, 631 S.W.3d at 751; *Aguilar*, 263 S.W.3d at 434.

Although Complainant was a reluctant witness, she nonetheless testified that she and Appellant were in "a tussle" during which she sustained a bloody lip and redness on her chest. She testified that Appellant "held me down and big faced me with his hands (indicating)." To show what she meant by "big faced," Complainant made "a motion in front of [he]r face" and stated: "I guess when somebody, you know, push you out the way that way." She testified that the altercation "started off [by] pushing each other," but she unequivocally stated that Appellant "gave the first strike" to her face. Complainant admitted that during the altercation, Appellant caused her bloody lip and the redness on her chest. She affirmed that she was "absolutely sure that" Appellant "caused that" redness.

The jury also saw photos taken by police after the altercation which showed Complainant having a bloody lip, "dry blood all around [her] mouth," and redness on her chest. Complainant confirmed that the photos "fairly and accurately represent what [she] looked like the night that the police came and responded" to her 9-1-1 call. Further, the jury heard the audiotape of Complainant's 9-1-1 call, in which she can be heard asking for police to be sent to her home because her boyfriend, Appellant, "was pushing on me and fighting on me."

Officer Saenz also testified that, when he saw Complainant after the altercation, she had a bloody lip and "the injuries on [her] appear[ed] consistent with her allegations of what had happened." He testified that her "bloody lip and some redness around her neck and chest area" are injuries "consistent with an assault." He also stated that Complainant had complained she had been punched in the chest and it was his "testimony that [Complainant] . . . was hit in the face in the

9

lips."

Based on the evidence in the record and considering that the jury was the sole judge of the credibility of the witnesses and was free to apply common knowledge and life experience when giving effect to the evidence and inferences that may reasonably be drawn from the evidence, we conclude the jury reasonably could have determined that Appellant intentionally, knowingly, or recklessly caused Complainant bodily injury by hitting her in the face and punching her in the chest.

Accordingly, we overrule Appellant's first issue.

## C.    Prior Conviction

In his second issue, Appellant contends the evidence is insufficient to prove that he is the same person who had been convicted of a prior assault offense against a member of his family or household "as described in the initial charging paragraph of the Indictment."

As we stated above, a person commits a third degree felony assault if he:  (1) commits bodily injury assault against a person with whom the defendant has or has had a dating relationship, a family member, or a member of the defendant's household; and (2) the State proves that the defendant has a previous conviction for one of several offenses, including assaultive offenses, against a family member, a member of the defendant's household, or a person with whom the defendant has or has had a dating relationship.  *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A).

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that a prior conviction exists and the defendant is linked to that conviction.  *Henry v. State*, 509 S.W.3d 915, 918 (Tex. Crim. App. 2016); *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007).

No specific document or mode of proof is required to establish these two elements. *Henry*, 509 S.W.3d at 918; *Flowers*, 220 S.W.3d at 921. Nor is there a "best evidence" rule in Texas that requires a prior conviction be proven with any document, much less any specific document. *Flowers*, 220 S.W.3d at 921. Any type of evidence, documentary or testimonial, may suffice. *See id*. at 922.

Although the State may establish the existence of a prior conviction by admitting certified copies of the judgment, they are not normally sufficient standing alone to link the defendant to the prior conviction, even if the name on the judgment and sentence matched that of the defendant in trial. *See Beck v. State*, 719 S.W.2d 205, 209-10 (Tex. Crim. App. 1986) (en banc); *Paschall v. State*, 285 S.W.3d 166, 174-75 (Tex. App.—Fort Worth 2009, pet. ref'd); *see also Henry*, 509 S.W.3d at 919. Thus, the State has the burden of proving the link by putting forth independent evidence showing that the defendant is the same person named in the previous convictions. *See Beck*, 719 S.W.2d at 210; *see also Henry*, 509 S.W.3d at 920.

Typically, this link is proven by admitting certified copies of a judgment and sentence and authenticated copies of the Texas Department of Corrections records, including fingerprints, supported by expert testimony identifying the prints as identical to known prints of the defendant. *Paschall*, 285 S.W.3d at 174-75; *see Littles v. State*, 726 S.W.2d 26, 31-32 (Tex. Crim. App. 1984) (en banc, op. on reh'g). While this may be the preferred and most convenient way to establish a prior conviction and link it to the defendant, the State may prove these elements in a number of different ways, including the defendant's admission or stipulation or testimony by a person who was present when the defendant was convicted of the specified crime and can identify the defendant as that person. *See Henry*, 509 S.W.3d at 918; *Flowers*, 220 S.W.3d at 921-22. Acceptable evidence also includes

documentary proof which contains sufficient information to establish that a prior conviction exists and the defendant's identity as the person convicted, such as a record that contains photographs or a detailed physical description of a named person and the accused was present in court for the factfinder to compare his appearance with that person described in the record. *See Henry*, 509 S.W.3d at 918; *Flowers*, 220 S.W.3d at 922; *Littles*, 726 S.W.2d at 31-32; *see also Dorsett v. State*, 396 S.W.2d 115, 116 (Tex. Crim. App. 1965).

Regardless of the type of evidentiary puzzle pieces the State offers to prove the existence of a prior conviction and its link to a defendant, the factfinder determines if these pieces fit together sufficiently to complete the puzzle. *Flowers*, 220 S.W.3d at 923; *see also Henry*, 509 S.W.3d at 919. The factfinder considers the totality of the admitted evidence to determine whether there was a previous conviction and whether the defendant was the person convicted. *Flowers*, 220 S.W.3d at 923; *see also Henry*, 509 S.W.3d at 919. "If these two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Flowers*, 220 S.W.3d at 923.

Here, the State alleged in its indictment that Appellant had a prior conviction for family violence assault from January 23, 2012, in the 272nd District Court of Brazos County, Texas, in cause number 12-00282-CRF-272. The State introduced and the trial court admitted without objection State's exhibit 22, which is a certified copy of a judgment of conviction for family violence assault against Charles Martin in cause number 12-00282-CRF-272 from the 272nd District Court of Brazos County signed on January 23, 2012. Appellant contends that State's exhibit 22 constitutes insufficient evidence to prove he had a prior conviction for family violence assault as required for a third degree felony offense in this case

12

because the State (1) failed to connect Appellant to the judgment "by the customary use of an expert fingerprint analyst, even though there does appear to be legible fingerprints on two separate pages associated with the document;" and (2) attempted to link Appellant to the judgment by referencing a state identification number ("State ID") when the State ID which appears on the judgment "has not itself been proven to be connected to Appellant." We disagree.

At trial, Officer Saenz testified that law enforcement has access to a state or nationwide database "that helps provide law enforcement with different identifying information of individuals," such as their name, date of birth, government-issued IDs, FBI number (if they have one), Social Security number as well as "any identifying marks such as tattoos, scars, any aliases." He stated that he ran Appellant's "name through that nationwide or statewide database" which identified Appellant's "official date of birth" as "8/21/1980" and his "full name" as Charles Earl Martin. Appellant also had the following State ID: TX06392940. Officer Saenz testified that the database further identified Appellant by his height and weight; "[h]is height was listed as 6'1," and "[h]is weight was listed at 235" pounds. The jury had the opportunity to observe Appellant during trial to determine whether Appellant matched the height and weight listed in the database for him.

State's exhibit 22 — the certified copy of the January 23, 2012 judgment of conviction for family violence assault in cause number 12-00282-CRF-272 from the 272nd District Court of Brazoria County — identifies Appellant on the first page by the name Charles Martin and by State ID TX06392940. This is the same number that Officer Saenz found searching the database for Appellant's identifiers. The third page of the document, styled the State of Texas v. Charles Earl Martin in cause number 12-00282-CRF-272 in the 272nd District Court of Brazoria County,

13

contains a right thumbprint and the signature of Charles Martin. Further, Appellant's indictment in this case identifies him by his date of birth of August 21, 1980, and his full name Charles Earl Martin, which are identical to the identifiers Officer Saenz found for Appellant in the state/nationwide database.

Based on Appellant's specific State ID, name, date of birth, and personal descriptors, we find that the totality of the State's evidence shows Appellant was linked to the prior conviction for family violence assault of January 23, 2012 in cause number 12-00282-CRF-272 as alleged in the indictment. *See Ex Parte Warren*, 353 S.W.3d 490, 494-95 (Tex. Crim. App. 2011) (finding sufficient link that defendant was convicted of prior offenses; stating that "[m]ost importantly, both documents contain the same FBI number," which "is a 'unique identifier' that cannot be assigned to another person and is reliable in identifying an individual in criminal investigations"); *Gonzales v. State*, Nos. 05-19-00719-CR, 05-19-00724-CR, 05-19-00726-CR, 05-19-00727-CR, 05-19-00731-CR, 05-19-00733-CR, 05-19-00734-CR, 05-19-00750-CR, 2020 WL 1672554, at *3 (Tex. App.—Dallas Apr. 6, 2020, no pet.) (mem. op., not designated for publication) ("Harvey testified that the SID number assigned to a person is 'very unique.' Harvey's testimony and the exhibits from appellant's other convictions showed appellant's State ID number was TX06364381, and the judgment and sentence in State's Exhibit 17 states the State ID number for the person convicted in that case was TX06364381. This was sufficient evidence to link appellant to the judgment and sentence in State's Exhibit 17."); *see also Dorsett*, 396 S.W.2d at 116 (finding sufficient evidence to link defendant to prior conviction when jury had the opportunity to observe defendant and determine by comparison with the description in the record — date of birth, race, hair and eye color, weight, and height — whether he is the same person previously convicted); *but see Schroeder v. State*, Nos. 13-13-00379-

14

CR & 13-13-00380-CR, 2015 WL 1632309, at *9-10 (Tex. App.—Corpus Christi Apr. 9, 2015, no pet.) (mem. op., not designated for publication) (finding evidence is insufficient to link defendant to the convictions in her name because none of the documents in the exhibits contained any identifying characteristics that match those of defendant other than her first and last name); *Hensley v. State*, No. 02-13-00190-CR, 2014 WL 1999307, at *5 (Tex. App.—Fort Worth May 15, 2014, no pet.) (per curiam) (mem. op., not designated for publication) (finding evidence is insufficient to link defendant to the convictions in the exhibits because the exhibits contained no "identifiable information, such as photographs, fingerprints, or a physical description, that could be used to link Hensley to the judgments").

Therefore, we conclude that the evidence is legally sufficient to establish that Appellant previously had been convicted of family violence assault. We overrule Appellant's second issue.

## II.    Admission of Evidence

In his third and fourth issues, Appellant argues that the trial court erred by (1) allowing the State to introduce several judgments and other related documents in the punishment phase of trial; and (2) admitting an audiotape of a 9-1-1 call during the guilt-innocence phase of trial over Appellant's hearsay objection.

### A.    Standard of Review

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Colone v. State*, 573 S.W.3d 249, 263-64 (Tex. Crim. App. 2019); *Gutierrez v. State*, 585 S.W.3d 599, 615 (Tex. App.—Houston [14th Dist.] 2019, no pet.). If the trial court's ruling was within the zone of reasonable disagreement, we should not disturb the ruling. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will uphold the ruling if it is reasonably supported by the

record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Roderick v. State*, 494 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

## B.    Extraneous Offenses

Appellant argues in his third issue that the trial court erred by allowing the State to introduce several judgments and other related documents in the punishment phase "purporting to show that Appellant committed prior extraneous offenses, without the State proving that Appellant was the same person named in said documents."

### *1.    Error*

Appellant complains that the trial court admitted State's exhibits 21, 24, 26, 29, 30, 31, 32, 33, 36, 37, 38, 39, 42, and 43, which represent documentary evidence of charging documents, plea paperwork, judgments granting and revoking community supervision, and several judgments of conviction for offenses Appellant committed between 2000 and 2020. Appellant claims that he objected to the admission of "these exhibits on the basis that a finger-print match by the fingerprint analyst, Officer Neuendorff, could not be confirmed," and the State offered no other evidence linking him to the documents.[1]

During the punishment phase, the State may offer evidence as to any matter the trial court deems relevant to sentencing, including evidence of an extraneous offense or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). Evidence is relevant to

---

[1] Officer Neuendorff testified as a fingerprint analysis expert. He also took Appellant's fingerprints during the punishment phase of trial. The card with Appellant's fingerprints was admitted without objection as State's exhibit 41.

sentencing if the evidence is "helpful to the [factfinder] in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006).

The State admits that "in order for the exhibits offered by the state to be relevant to sentencing, they must be sufficiently linked to Appellant." Therefore, we turn to determining whether the numerous exhibits admitted by the trial court are sufficiently linked to Appellant. We find that the authorities we discussed in our analysis of issue two are equally applicable to the resolution of Appellant's third issue. Accordingly, acceptable evidence to link Appellant to the State's exhibits includes documentary proof, such as a record that contains photographs or a detailed physical description of a named person and the accused was present in court for the factfinder to compare his appearance with that person described in the record. *See Henry*, 509 S.W.3d at 918; *Flowers*, 220 S.W.3d at 922; *Littles*, 726 S.W.2d at 31-32; *Dorsett*, 396 S.W.2d at 116. Acceptable evidence may also include defendant's specific state identification number. *See Ex Parte Warren*, 353 S.W.3d at 494-95; *Gonzales*, 2020 WL 1672554, at *3.

We begin with State's exhibit 21, which contains an October 2, 2006 judgment from Brazos County for family violence assault granting Appellant community supervision in cause number 06-03946-CRM-CCL2 together with accompanying community supervision paperwork. The documents are linked to Appellant by his full name, specific State ID TX06392940, and signature which matches the signature on the fingerprint card Appellant signed when his fingerprints were taken during the punishment phase of trial and admitted without objection as State's exhibit 41 (hereinafter, the "fingerprint card").

State's exhibit 24 contains charging documents (complaint and information) filed in Brazos County in cause number 06-03946-CRM-CCL2 on August 2, 2006,

17

for the same family violence assault offense as in State's exhibit 21. The documents are linked to Appellant by his full name, date of birth, height, weight, race, sex, hair color, and eye color.

State's exhibit 26 contains Texas Department of Criminal Justice ("TDCJ") records for Appellant, consisting of Appellant's mug shots, an April 2, 2015 judgment of conviction for family violence assault with a previous conviction from Washington County in cause number 16,554, and an April 2, 2015 judgment of conviction for "assault family violence enhanced" from Washington County in cause number 16,855. Appellant is linked to the documents by his full name, specific State ID TX06392940, and photographs. Additionally, the two judgments in State's exhibit 26 are the exact same judgments contained in State's exhibits 27 and 28, which were admitted without objection[2] and reflect Appellant's full name and specific State ID TX06392940.

State's exhibit 29 contains charging documents (complaint and information) filed in Brazos County in cause number 20-00012-CRM on January 2, 2020, for an unlawful restraint that occurred in December 2019. Appellant is linked to the documents by his full name, date of birth, height, weight, race, sex, hair color, and eye color.

State's exhibit 30 is a March 1, 2021 judgment and sentence in cause number 20-00012-CRM from Brazos County for unlawful restraint that occurred in December 2019. Appellant is linked to the document by his name and through State's exhibit 29 which contains Appellant's name, the same cause number and court, and the date of the unlawful restraint offense.

State's exhibit 31 is a March 5, 2020 indictment from Brazos County in

---

[2] Appellant does not challenge admission of State's exhibits 27 and 28 on appeal.

cause number 20-01065-CRF-361 against Appellant for family violence assault with a previous conviction for family violence assault enhanced to a second degree felony because of a prior conviction for family violence assault. Appellant is linked to the document by his name, specific State ID TX06392940, date of birth, height, weight, race, sex, eye color, and hair color.

State's exhibit 32 is a March 2, 2021 judgment of conviction from Brazos County in cause number 20-01065-CRF-361 against Appellant for the second degree felony offense of family violence assault with a previous conviction and an agreement to a lifetime protective order. It shows that the trial court assessed a seven-year sentence against Appellant in the same county and cause number as in State's exhibit 31. Appellant is linked to the document by his name and specific State ID TX06392940. Moreover, Appellant admitted during his closing argument that he was "currently serving a sentence from Brazos County for an amount of seven years."

State's exhibit 42 is a May 23, 2013 indictment against Appellant for the third degree felony offense of family violence assault with a previous conviction from Washington County in cause number 16,554. Appellant is linked to the document by his full name, date of birth, sex, and race. This exhibit is also connected to the April 2, 2015 judgment of conviction for family violence assault with a previous conviction from Washington County in cause number 16,554, which was admitted without objection as State's exhibit 27 and reflects Appellant's full name and specific State ID TX06392940.

State's exhibit 43 is a February 13, 2014 indictment against Appellant for the third degree felony offense of "assault family violence enhanced" from Washington County in cause number 16,855. Appellant is linked to the document by his full name, date of birth, sex, and race. The exhibit is also connected to the

19

April 2, 2015 judgment of conviction for "assault family violence enhanced" from Washington County in cause number 16,855, which was admitted without objection as State's exhibit 28 and reflects Appellant's full name and specific State ID TX06392940.

Contrary to Appellant's assertion, we find that the documents in State's exhibits 21, 24, 26, 29, 30, 31, 32, 33, 36, 37, 38, 39, 42, and 43 are linked to Appellant "proving that Appellant was the same person named in said documents" because they contained sufficient identifiers, like Appellant's specific State ID, name, date of birth, and personal descriptors, for the trial court to consider. *See Henry*, 509 S.W.3d at 918 (State may establish a prior conviction and link it to defendant by documentary proof, such as a record that contains photographs or a detailed physical description of a named person and the accused was present in court for the factfinder to compare his appearance with that person described in the record); *Flowers*, 220 S.W.3d at 922 (same); *Littles*, 726 S.W.2d at 31-32 (same); *Dorsett*, 396 S.W.2d at 116 (same); *Ex Parte Warren*, 353 S.W.3d at 494-95 (finding sufficient link that defendant was convicted of prior offenses because "both documents contain the same FBI number," which is considered a person's unique identifier); *Gonzales*, 2020 WL 1672554, at *3 (finding sufficient link that defendant was convicted of prior offense because exhibits from defendant's other convictions showed his unique State ID). Therefore, we conclude that the trial court did not abuse its discretion in admitting State's exhibits 21, 24, 26, 29, 30, 31, 32, 33, 36, 37, 38, 39, 42, and 43.

However, it is questionable whether State's exhibits 33, 36, 37, and 38 are sufficiently linked to Appellant to prove that he is the same person named in the documents contained in these exhibits. State's exhibit 33 contains charging documents filed against Appellant for deadly conduct in Washington County in

cause number 00-77 on February 15, 2000. It also contains an April 6, 2000 judgment of conviction for the reduced charge of a class C misdemeanor assault associated with the charge from Washington County in cause number 00-87.

State's exhibit 36 contains charging documents filed against Appellant for possession of a prohibited weapon (a switchblade) in Washington County in cause number 07-277 as well as plea paperwork, a judgment and sentence of community supervision for the possession of a prohibited weapon charge, a motion to revoke probation, and a revocation order.

State's exhibit 37 contains charging documents filed in Washington County in cause number 08-664 against Appellant for assault on August 18, 2008. It also contains a motion to dismiss the charged offense because the offense was "taken into consideration under Texas Penal Code 12.45 in [cause number] 08-728."

State's exhibit 38 contains charging documents filed against Appellant for possession of a dangerous drug in Washington County in cause number 08-728 on September 2, 2008. It also contains plea paperwork and a March 25, 2009 judgment of conviction against Appellant for the charged offense in cause number 08-728.

The documents in these exhibits show only Appellant's name and signature; there are no other identifiers or descriptors linking Appellant to the documents. We have not found, and the State has not cited, any authorities that have stated that a document showing only a defendant's name and signature is sufficient to support finding a link. But assuming, without deciding, that the trial court abused its discretion in admitting State's exhibits 33, 36, 37, and 38, we conclude that Appellant was not harmed by the alleged trial court error as we discuss below.

### 2. *Harm*

We review the erroneous admission of evidence for non-constitutional error and reverse only if the appellant shows the erroneous admission affected his substantial rights. *See* Tex. R. App. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *see also Rodriguez v. State*, 546 S.W.3d 843, 864-65 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the factfinder's verdict. *Coble*, 330 S.W.3d at 280; *see also Torres v. State*, 424 S.W.3d 245, 260 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). But if the improperly admitted evidence did not influence the factfinder or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Coble*, 330 S.W.3d at 280; *Torres*, 424 S.W.3d at 260.

In performing this analysis, we examine the entire record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Coble*, 330 S.W.3d at 280; *Torres*, 424 S.W.3d at 260. We consider any testimony or physical evidence admitted for the factfinder's consideration, the nature of the evidence supporting the factfinder's decision, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

Appellant argues he was harmed by the admission of State's exhibits 21, 24, 26, 29, 30, 31, 32, 33, 36, 37, 38, 39, 42, and 43 because the trial court (1) sentenced him to twenty years' confinement "which is the maximum amount allowed by law within the punishment range of a second degree felony;" and (2) stacked his sentence with that of another sentence he was serving from an unrelated conviction, and a "stacked sentence is rarely pronounced." After reviewing the record, we conclude that any error in the admission of State's exhibits did not affect Appellant's substantial rights.

Here, only four of the fourteen challenged exhibits were not properly admitted — exhibits 33, 36, 37, and 38 — which contain a 2008 dismissed assault charge and judgments of conviction for assault in 2000, possession of a deadly weapon in 2007, and possession of a dangerous drug in 2008.

In contrast, the other ten exhibits Appellant challenged were properly admitted and relevant to the assessment of Appellant's punishment. These exhibits included several charging documents and judgments of conviction for family violence assault in 2006, family violence assault with a previous conviction in 2015, family violence assault enhanced in 2015, unlawful restraint in 2021, and second degree felony family violence assault with a previous conviction and an agreement to a protective order in 2021. These properly admitted exhibits were especially relevant for the trial court to consider in sentencing Appellant in this case because they showed Appellant's numerous charges and convictions for family violence assault.

Further, the trial court admitted State's exhibits 25, 27, 28, 34, 35, and 40 without objection into evidence. These exhibits contained, among other documents, two 2002 judgments of convictions for criminal trespass (exhibits 34 & 35), a 2018 judgment of conviction for possession of a controlled substance (exhibit 40), a 2012 indictment for family violence assault with a previous conviction (exhibit 25), family violence assault with a previous conviction in 2015 (exhibit 27), and family violence assault enhanced in 2015 (exhibit 28).[3]

Additionally, no witness testified on Appellant's behalf nor was there any mitigating or redeeming evidence offered by Appellant. Although Appellant claims that a "stacked sentence is rarely pronounced," he cites no authority to

---

[3] State's exhibits 27 and 28 contain the same judgments of conviction admitted and enclosed in exhibit 26.

23

support the veracity of his assertion. The trial court easily could have seen a pattern of criminal behavior spanning over two decades, but even more importantly, the trial court could have considered the numerous family violence assault convictions.

Based on our examination of the entire record, including the testimonies of Complainant and Officer Saenz, the lack of any mitigating or favorable evidence, the numerous properly admitted and unchallenged exhibits showing a lengthy criminal history and several convictions for the same offense as the one the jury found Appellant guilty of in this case, we cannot conclude that the admission of State's exhibits 33, 36, 37, and 38 had a substantial and injurious effect on the trial court's decision in assessing Appellant's punishment or had any more than a slight effect on it. Accordingly, we overrule Appellant's third issue.

### C.   Hearsay

In his fourth issue, Appellant asserts that the trial court erroneously admitted an audiotape of Complainant's 9-1-1 call. In that regard, Appellant argues that the audiotape constitutes inadmissible hearsay because it does not fall within the excited utterance or present sense exceptions as "[t]here was no indication from the tone of [Complainant]'s voice on the recording that [she] was in any significant distress or emotionally affected state at the time of the call . . . [n]or was the call contemporaneous with the alleged event."

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). In order for hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *see* Tex. R. Evid. 802. Rule 803(1) provides an exception for a present sense impression, and Rule 803(2) provides an

24

exception for an excited utterance. Tex. R. Evid. 803(1), (2).

A present sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. *Id*. 803(1). Under this exception, "the contemporaneity of the statement with the event that it describes eliminates all danger of faulty memory and virtually all danger of insincerity." *Fischer v. State*, 252 S.W.3d 375, 379 (Tex. Crim. App. 2008). The exception "is predicated on the notion that 'the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes.'" *Id*. at 381. The risk of falsehood is minimized because the statement is instinctive and not deliberate. *See id*. at 381.

There is no bright-line rule as to when a lapse of time becomes too long for a statement to be considered "immediately after" a declarant perceived the event. *Valmana v. State*, 605 S.W.3d 490, 507-08 (Tex. App.—El Paso 2020, pet. ref'd); *Castillo v. State*, 517 S.W.3d 363, 378 (Tex. App.—Eastland 2017, pet. ref'd); *see also Kubin v. State*, 868 S.W.2d 394, 396 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). The Court of Criminal Appeals has explained that for a statement to fall under the present sense impression exception, it must have been made "before any thoughts of litigation have crystallized" and "without any reflection, thought process, or motive to fabricate or exaggerate." *Fischer*, 252 S.W.3d at 379.

Here, Complainant called 9-1-1 to ask for police to be sent to her home because her boyfriend, Appellant, "was pushing on me and fighting on me." Complainant stated that Appellant had driven off "not even a minute — two minute[s] ago." This evidence supports a finding that Complainant made her statements to the 9-1-1 dispatcher immediately after the assault happened. Appellant also acknowledged in his brief that the recording was "made shortly after the event."

25

We conclude that the trial court reasonably could have determined that Complainant's call occurred immediately after the assault and that there was little opportunity for Complainant to make a calculated misstatement of the event that occurred so that the contemporaneous requirement of rule 803(1) was met. *See Kubin*, 868 S.W.2d at 396-97 (finding that declarant's statement made within four to six minutes after the event met the contemporaneous requirement of rule 803(1) and that trial court acted within its discretion admitting the statement as a present sense impression); *Harris v. State*, 736 S.W.2d 166, 167 (Tex. App.—Houston [14th Dist.] 1987, no pet.) (finding that the passage of 30 minutes was not too long to qualify the declarant's statement as a present sense impression). Therefore, it was not an abuse of discretion for the trial court to admit the audiotape as a present sense impression of Complainant.

Appellant also contends that the audiotape was not admissible as an excited utterance because it does not show that Complainant "was in any significant distress or emotionally affected state at the time of the call" and, thus, she was not excited at the time she made the statements. However, because we have determined that the audiotape was admissible as a present sense impression, we need not address Appellant's argument that the audiotape was inadmissible as an excited utterance. We overrule Appellant's fourth issue.

## CONCLUSION

Having overruled Appellant's four issues, we affirm the trial court's judgment.

26

/s/    Meagan Hassan
Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).